United States Court of Appeals,

Fifth Circuit.

No. 95-11110.

In the Matter of DP PARTNERS LTD. PARTNERSHIP, Debtor.

HALL FINANCIAL GROUP, INC., Appellant,

v.

DP PARTNERS, LTD. PARTNERSHIP;  Sussex Properties, Inc., Appellees.

Feb. 28, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, and JOLLY and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

This appeal requires the determination of the appropriate procedures for granting a creditor administrative fees, specifically attorney's fees, under 11 U.S.C. § 503 of the Bankruptcy Code.  Concluding that the courts *a quo* erred in their construction of that section we vacate the judgment appealed and remand for further proceedings consistent herewith.

*Background*

DP Partners Limited Partnership in 1993 filed a Chapter 11 petition after defaulting on note payments on real estate in Texas and Arizona.[1]  DP filed its first plan of reorganization in

---

[1]According to DP it filed for bankruptcy, with the approval of the creditor holding the notes, to modify the terms of approximately $65,000,000 in loans.  A Chapter 11 proceeding was required for modification because certain loan restrictions prevented voluntary changes.

February 1994, providing for approximately $37,000,000[2] in payments to its creditors. Hall Financial Group, recognizing that the proposed plan undervalued DP's property holdings, acquired three small unsecured claims, thus becoming a creditor.[3] HFG subsequently proposed a competing plan, setting off a bidding war. After several amendments the DP plan prevailed. Due in part to HFG's participation the final amended plan provided approximately $3,000,000 more for the creditors than the previous version.[4] In the process, however, HFG incurred $150,700 in attorney's fees.

On September 15, 1994, after plan confirmation but before the administrative claim deadline, HFG moved for attorney's fees under 11 U.S.C. § 503(b)(3)-(4). DP timely objected. The bankruptcy court held a hearing and determined that HFG was entitled to only $12,500. The court stated that HFG would have been entitled to all of its fee claim had it given DP a "warning" before confirmation that it intended to seek such reimbursement. In the absence of such notice, the court reasoned, DP properly relied on the lack of a large administrative claim in formulating its plan. In so holding, the bankruptcy court relied on two New Hampshire cases

[2]At or near the time Hall Financial Group joined the bidding DP amended its plan to provide for approximately $46,700,000 in payments.

[3]DP contends that HFG bought into the bankruptcy so that it could bid on the apartment properties at bargain prices. According to DP, HFG "bought a ticket to an auction."

[4]This figure conceivably might be as high as $12,500,000. Originally, the DP plan provided for $37,300,000 in payments. HFG responded with a plan providing for approximately $46,500,000 in payments. The DP plan that was finally confirmed provided for $49,800,000 in payments.

which implied a notice requirement in 11 U.S.C. § 503.[5] Both HFG and DP appealed to the district court which summarily affirmed. On appeal to this court DP contends that the district court erred in affirming the $12,500 fee award because HFG waived its right to claim expenses and failed to make a substantial contribution warranting an award of fees and expenses. HFG contends that the district court erred in holding that 11 U.S.C. § 503 requires advance warning of administrative claims.

*Analysis*

Generally, 11 U.S.C. § 503 provides that "[a]fter notice and a hearing, there *shall* be allowed administrative expenses" for entities falling into certain categories.[6] In interpreting statutes, a court's function "is to construe the language so as to give effect to the intent of Congress."[7] The most compelling demonstration of congressional intent is the wording of the statute.[8] Use of the word "shall" connotes a mandatory intent.[9] The court is bound by the plain language of the statute especially where, as here, there is nothing in the statute or its legislative

---

[5]*In re Diberto,* 164 B.R. 1 (Bankr.D.N.H.1993); *In re Public Serv. Co.,* 160 B.R. 404 (Bankr.D.N.H.1993)

[6]11 U.S.C. § 503(b) (1993 & Supp.1996) (emphasis added).

[7]*United States v. American Trucking Ass'ns,* 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940).

[8]*Id.*

[9]*Sierra Club v. Train,* 557 F.2d 485 (5th Cir.1977).

history to indicate a contrary intent.[10] Therefore, under the plain language of the statute, if HFG meets the requirements of section 503, it *shall* recover administrative expenses. This statutory mandate permits of no discretionary calls by the courts.

Section 503 first requires that HFG file a timely request for administrative expenses or be excused therefrom for cause.[11] Thereafter, following notice and a hearing, HFG must prove that its claimed expenses and fees are compensable under one or more subsections in section 503(b). Specifically at issue in this appeal are subsections (b)(3)(D) and (b)(4). Those two subsections, read in conjunction with section 503(b), provide that compensable administrative expenses include "the actual, necessary expenses ... incurred by ... a creditor ... in making a substantial contribution in a case under chapter 9 or 11 of this title"[12] and "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection."[13] Thus, if HFG files a timely motion for administrative expenses falling into the above categories, the bankruptcy judge should determine the expenses that were actual, necessary expenses under subsection (b)(3)(D), and the

_____

[10]*Id.; see also Louisiana Credit Union League v. United States,* 693 F.2d 525 (5th Cir.1982); *cf. Demarest v. Manspeaker,* 498 U.S. 184, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (noting that where terms in a statute are unambiguous, courts must apply them as written).

[11]11 U.S.C. § 503(a).

[12]11 U.S.C. § 503(b)(3)(D).

[13]11 U.S.C. § 503(b)(4).

amount of reasonable fees for professional services under subsection (b)(4).

*Timely Filing for Administrative Expenses.*

The question of the appropriate timing of a request for administrative fees and expenses is *res nova* for this court. Both the bankruptcy and district courts determined that HFG was required to give advance warning that it would seek a substantial administrative claim prior to confirmation,[14] relying primarily upon *In re Public Serv. Co.*[15] That case involved facts somewhat similar to the instant appeal in that a losing bidder in the plan confirmation process sought reimbursement for administrative fees incurred during the confirmation dispute. Initially the bankruptcy court denied the motion for fees, holding that the creditor failed to make a substantial contribution to the Chapter 11 proceedings. As an alternative holding, the bankruptcy judge determined that to be entitled to fees the creditor had to give advance warning of its intent to seek expenses to the court and the debtor "prior to the bidding process by an appropriate motion,"[16] reasoning that nondisclosure of large claims can potentially wreak havoc in the bidding process by making otherwise competitive plans economically

---

[14]This novel, implied notice requirement is not to be confused with the notice required in 11 U.S.C. § 1129(a)(4). That provision requires a plan proponent to disclose its intent to recover fees and expenses through the plan it proposes. 11 U.S.C. § 1125(b) requires the plan proponent to disclose this intent in both its plan and the disclosure statement. HFG, as a plan proponent, complied with both of these statutes.

[15]160 B.R. 404 (Bankr.D.N.H.1993).

[16]*Id.* at 455.

unfeasible after confirmation. The court observed that scheming litigants might artificially inflate their bids in an attempt to escalate bidding, knowing that, at a minimum, their fees for the inflated, unrealistic bid would be reimbursed. In essence, the court apparently was impressed that the risk of noncompensation for administrative fees would provide a desirable check on fees and expenses and would keep bidding honest.

We find this well-intentioned attempt at equity to be at odds with the clear statutory language. Section 503 makes two references to the timing of requests for administrative fees. First, section 503(a) states that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." This provision appears intentionally vague and broad. Legislative history reveals that Congress intended to leave the setting of specific filing deadlines to the Rules of Bankruptcy Procedure.[17] The Rules of Bankruptcy Procedure, in turn, largely defer that duty to the bankruptcy judges.[18] As a result, bankruptcy judges have, for some time, been accorded discretion in setting

---

[17]*See* S.Rep. No. 989, 95th Cong., 2d Sess. 66 (1978) (stating that "the Rules of Bankruptcy Procedure will specify the time, the form, and the method of such a filing"), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5852; H.R.Rep. No. 595, 95th Cong., 1st Sess. 355 (1977) (same), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6311.

[18]3 *Collier on Bankruptcy* ¶ 503.1, at 503-4 n. 2c (Lawrence P. King ed., 15th ed. 1994) (noting that the Bankruptcy Reform Act of 1994 sets no time limit for filing administrative claims).

administrative-claim bar-dates.[19] In the present case that deadline was 60 days after the effective date of the plan.

The second reference to the timing of requests for fees is found in section 503(b) which provides, "After notice and a hearing, there shall be allowed, administrative expenses...." This notice requirement does not mandate "advance warning" of intent to file a claim for fees before plan confirmation processes begin. Rather, "after notice" merely refers to sending notice of the application and hearing on fees so that interested parties can contest their reasonableness. Succinctly stated, the section 503(b) notice requirement proscribes *ex parte* fee determinations—it does not require preconfirmation warning of intent to seek fees and expenses.

In the present case, no one disputes that HFG requested administrative fees and expenses well within the 60-day bar date for such claims. The Bankruptcy Code and Rules require nothing more. Further, nothing in the Bankruptcy Code and Rules suggested to HFG that after it made a substantial contribution, its claim for administrative fees and expenses would be barred by some implied advance warning requirement.

---

[19]*Id.* (noting that because nothing in the Bankruptcy Rules or Code sets deadlines for filing administrative claims, bankruptcy judges "may set such deadlines on a case by case basis"). Administrative expense claims are to be distinguished from other claims against the estate for which a creditor must timely file a proof of claim under 11 U.S.C. § 501. *See NL Indus., Inc. v. GHR Energy Corp.,* 940 F.2d 957 (5th Cir.1991) (holding that an administrative expense claimant need not file a proof of claim under section 501 to be entitled to reimbursement of expenses incurred to benefit the debtor's estate), *cert. denied,* 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992).

*Substantial Contribution.*

"[T]he policy aim of authorizing fee awards to creditors is to promote meaningful creditor participation in the reorganization process."[20] Thus, a claimant is entitled to administrative fees and expenses if these costs are incurred in making a substantial contribution to a Chapter 9 or 11 case. Generally, services which make a substantial contribution are those which "foster and enhance, rather than retard or interrupt the progress of reorganization."[21] Beyond that general statement, however, the concept of substantial contribution is not defined in this circuit. Though legislative history is of little help in divining a precise measure of substantial contribution, decisions from other circuits appear to distinguish between creditors' actions that "incidentally" benefit the estate and creditors' actions that directly and demonstrably benefit the estate.[22] In essence, these cases examine a creditor's motivation in expending the time and fees at issue: if a creditor is actively and exclusively pursuing its own self interest, any benefits accruing to the debtor's estate or other creditors are merely incidental benefits; these are not

_____

[20]*In re Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1253 (5th Cir.1986) (internal quotation marks omitted) (citations omitted).

[21]*Id.* (internal quotation marks omitted) (citations omitted).

[22]*See, e.g., Lebron v. Mechem Fin., Inc.,* 27 F.3d 937 (3d Cir.1994); *In re Lister,* 846 F.2d 55, 57 (10th Cir.1988) (holding that "[a]dministrative expenses ... are compensable under 11 U.S.C. § 503(b)(3)(D), if those expenses are incurred in efforts which were intended to benefit, and which did directly benefit, the bankruptcy estate").

8

deemed substantial.  DP relies heavily upon this theory in opposing HFG's request for additional fees.  Indeed, HFG concedes that its actions were motivated by economic self interest.

Initially, we note that nothing in the Bankruptcy Code requires a self-deprecating, altruistic intent as a prerequisite to recovery of fees and expenses under section 503.  Rather, section 503 patently states that a creditor is entitled to actual and necessary expenses "incurred ... in making a substantial contribution in a case under chapter 9 or 11."  Finding no statutory definition and nothing in the entire statutory scheme or legislative history to indicate a contrary intent, we abide by the canon that words in a statute are to be given their "ordinary, everyday" meaning.[23]  Thus, the phrase "substantial contribution" in section 503 means a contribution that is "considerable in amount, value or worth."[24]  The benefits, if any, conferred upon an

---

[23]*Crane v. Commissioner,* 331 U.S. 1, 6, 67 S.Ct. 1047, 1050-51, 91 L.Ed. 1301 (1947).

[24]*Webster's Third New International Dictionary* 2280 (4th Ed.1976).  Legislative history, albeit scant, also supports this construction:

> The phrase "substantial contribution in the case" is derived from Bankruptcy Act §§ 242 and 243.  It does not require a contribution that leads to confirmation of a plan, for in many cases, it will be a substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation, such as fraud in connection with the case.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 355 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6311.  In the present case, HFG uncovered a fraudulent transfer, and its other actions led directly to the confirmation of a plan.  HFG admits that these actions were motivated by self interest.  Certainly, if Congress intended to withhold reimbursement for administrative

estate are not diminished by selfish or shrewd motivations. We therefore hold that a creditor's motive in taking actions that benefit the estate has little relevance in the determination whether the creditor has incurred actual and necessary expenses in making a substantial contribution to a case.

The development of a more concrete standard of substantial contribution is best left on a case-by-case basis. At a minimum, however, the court should weigh the cost of the claimed fees and expenses against the benefits conferred upon the estate which flow directly from those actions. Benefits flowing to only a portion of the estate or to limited classes of creditors are necessarily diminished in weight. Finally, to aid the district and appellate courts in the review process, bankruptcy judges should make specific and detailed findings on the substantial contribution issue.

In the present case, the bankruptcy court specifically found that HFG made a substantial contribution in DP's Chapter 11 case, stating that "HFG's participation in the case did benefit the Estate and make a substantial contribution in terms of (a) discovery of the fraudulent conveyance potential litigation and its benefit going to the secured creditor; (b) termination of exclusivity; and (c) causing the Debtor to change its plan." These findings are supported by the evidence and were not clearly erroneous. HFG's participation in the confirmation fight resulted

_____

expenses under these circumstances, at least some indication of that intent would appear in the statute or its legislative history.

10

in at least a $3,000,000 benefit to all creditors of the estate.

*Determining Whether Claimed Expenses are Actual and Necessary, and Whether Professional Fees are Reasonable*

Finally, claimants successfully complying with the foregoing requirements will have to prove that claimed expenses were actual and necessary and that any fees are reasonable. Section 503(b)(3)(D) provides that compensable administrative expenses include "the actual, necessary expenses ... incurred by ... a creditor ... in making a substantial contribution in a case under chapter 9 or 11."[25] This provision requires the bankruptcy judge to scrutinize claimed expenses for waste and duplication to ensure that expenses were indeed actual and necessary. It also requires the judge to distinguish between expenses incurred in making a substantial contribution to the case and expenses lacking that causal connection, the latter being noncompensable. Necessarily, the bankruptcy court enjoys broad discretion in making these determinations.[26]

A closely-related but separate provision is subsection (b)(4), authorizes an administrative fee award for professional services as follows:

> reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph 3 of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses

---

[25]11 U.S.C. § 503(b)(3)(D).

[26]*In re Lister; see also In re Consolidated Bancshares* (holding that substantial contribution is a question of fact).

incurred by such attorney or accountant.[27]
This provision is expressly dependent upon a claimant qualifying for an administrative expense award in subsection (3), which requires that expenses, other than professional fees, be actual and necessary. Whether Congress intended to impose different standards by using the words "actual and necessary" in one provision and "reasonable" in another is unclear. The import of subsection (4), however, is clear. Congress intended for the judge to evaluate the listed factors in setting a reasonable fee. Because all of these factors are subsumed in the *Johnson v. Georgia Highway Express*[28] attorney's fees analysis, *Johnson* and progeny govern an award of fees in the present case.[29] This determination, like the inquiry in subsection (3), is a matter committed to the sound discretion of the bankruptcy court.[30]

## *Conclusion*

HFG filed its claim by an appropriate motion before the administrative claim bar date. It is entitled to actual and necessary expenses incurred in making a substantial contribution to DP's Chapter 11 reorganization, including reasonable professional fees. We therefore VACATE the $12,500 fee award and REMAND for the setting of a fair and reasonable fee herein.

---

[27]11 U.S.C. § 503(b)(4).

[28]488 F.2d 714 (5th Cir.1974).

[29]*In re Lawler,* 807 F.2d 1207 (5th Cir.1987).

[30]*Id.; In re Lister.*