**In re RAIL PASS EXPRESS, INC., Debtor**

**Bankruptcy No. 97–51847.
EIN 31–1171726.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Sept. 25, 1998.

Lawrence E. Oscar, Hahn, Loeser & Parks LLP, Cleveland, OH, James E. Morgan, Hahn, Loeser & Parks LLP, Columbus, OH, Howard A. Wintner, c/o Barrett, Gravante, Carpinello & Stern, New York City, for Rail Europe, Inc.

Gary Paul Price, The Law Firm of Price and Jones, Columbus, OH, James H. Bownas, Gamble Hartshorn Alden Co. L.P.A., Columbus, OH, for Debtor.

John A. Gleason, Benesch, Friedlander, Coplan & Aronoff LLP, Columbus, OH, for Forsyth Travel, Inc.

Office of the U.S. Trustee, Columbus, OH.

### OPINION AND ORDER ON RAIL EUROPE, INC.'S MOTION FOR ATTORNEYS' FEES AND EXPENSES

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court on the motion of Rail Europe, Inc., a creditor herein, for an award of its attorneys' fees and expenses. Rail Europe claims entitlement to such fees and expenses pursuant to 11 U.S.C. § 503(b) because they were allegedly incurred in making a substantial contribution to this bankruptcy estate by insuring that all creditors received full payment of their claims with interest. The debtor opposed Rail Europe's motion and requested a hearing. The matter was heard by the Court on July 23, 1998.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district. This is a core matter which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(A) and (B).

In support of its application, Rail Europe relies on the invoices of professional services performed by its attorneys and asks the Court to take judicial notice of the filings and prior hearings in this case. The invoices were admitted into evidence as Exhibits A and B. Rail Europe did not call any witnesses of its own, but did cross-examine the debtor's witnesses.

The debtor called two witnesses, Mary Kirsch, its office manager, and Heinz Wesner, the president of DER Travel Services in the United States. The debtor is currently an outlet for DER Travel Services.

The crux of the testimony offered by the debtor is that it always had intended to pay its creditors in full, and that Rail Europe's efforts had nothing to do with the successful outcome of this case. If anything, the debtor asserts, Rail Europe's activities in this case produced a negative impact. Rail Europe's motion to convert, the debtor says, was not the impetus for the filing of its first plan of reorganization; nor did the competing plan proposed by Rail Europe and Forsyth Travel cause the debtor to sweeten its plan and ultimately dismiss its case with an immediate full payment of its creditors. Rather, the debtor states that its vastly improved sales figures for the later months of 1997 convinced DER Travel Services and its suppliers other than Rail Europe to grant it the favorable terms needed to immediately pay off its creditors.

Section 503(b) of the Bankruptcy Code provides that, after notice and hearing, the Court shall allow as administrative expenses the actual, necessary expenses incurred by a creditor in making a substantial contribution in a case under chapter 11. 11 U.S.C. § 503(b)(3)(D). The Court shall also

allow reasonable compensation for the creditor's attorney in making the substantial contribution. 11 U.S.C. § 503(b)(4). In general, services that confer a substantial benefit are those which "foster and enhance, rather than retard or interrupt the progress of reorganization." *Hall Financial Group, Inc. v. DP Partners, Ltd. Partnership (Matter of DP Partners Ltd. Partnership)*, 106 F.3d 667, 672 (5th Cir.1997) (citation omitted).

■ Based on its review of the evidence, the Court finds that Rail Europe made a substantial contribution in this chapter 11 case. At the time Rail Europe filed its motion to convert, the exclusive period for the debtor to file a plan of reorganization and to obtain acceptances of that plan had long since expired. By its witness' own admission, the motion to convert was one of the reasons the debtor filed its first plan in December 1997.

The first plan proposed by the debtor provided for payment of its unsecured creditors in full but over time and without interest. Two weeks later, the debtor filed a second plan which provided for full payment on the effective date, but again without interest. On March 8, 1998, the debtor moved to dismiss its case upon full payment to all creditors with interest. The submission of the debtor's second plan and its motion to dismiss occurred after the filing of the plan by Rail Europe and Forsyth Travel. This competing plan would have paid creditors in full with interest on the effective date.

The debtor maintains that its negotiations with suppliers, particularly DER Travel Services, enabled it to continually sweeten its deal until it could do what it had intended to do all along, i.e., pay its creditors in full. The success of these negotiations, according to the debtor, did not depend on any actions undertaken by Rail Europe, but instead were the result of its vastly improved sales figures.

The Court does not take issue with the debtor's evidence on this score. It appears that the agreement with DER Travel Services, obtained after these sales figures became available, enabled the debtor to pay off its creditors. The Court's concern is whether the actions of Rail Europe forced the debtor to come up with a deal whereby all creditors would be paid in full immediately *or* to face the prospect that its present ownership interest would not survive reorganization. The Court concludes that Rail Europe's actions did produce the beneficial effect. Without Rail Europe's actions, there would have been little incentive for the debtor to come up with a better plan even though subsequent events made it possible to do so.

The debtor also attacks Rail Europe's motives in undertaking the motion to convert, the submission of the competing plan, and other actions in this case. Where a creditor's actions result in a benefit to the estate, however, the creditor's motivation for taking such actions has little relevancy to whether it is entitled to fees and expenses under § 503(b) for making a substantial contribution. *D P Partners*, 106 F.3d at 672.

Having found that Rail Europe made a substantial contribution to this bankruptcy estate, this Court must determine the value of its services. The Court reviewed the invoices submitted by Rail Europe and concludes that only those services which directly relate to the motion to convert and the submission of the competing plan are compensable as administrative expenses. The value of such services indicated in Exhibit A is $14,560. This figure includes services beginning November 19, 1997 with the draft preparation of the motion to convert, and ending with the debtor's motion to dismiss filed on March 8, 1998. The $14,560 is exclusive of services performed during the time frame which the Court deems not to have been directly related.

The Court also reviewed the invoices of Howard A. Wintner included in Exhibit B, but found no means of separating out those services which were directly related to the motion to convert and the submission of the competing plan. For this reason, and because Mr. Wintner was not present to provide sufficient explanation of his services, the Court will not allow any of those fees as an administrative expense.

■ The Court also makes no award of expenses to Rail Europe. The invoices detailing those expenses place them in gener-

alized categories, and the Court cannot determine which of the expenses conferred a benefit upon the estate and which did not under the criteria utilized.

Based on the foregoing, the Court allows, as an administrative expense, reasonable compensation to Rail Europe's attorneys in the amount of $14,560.

**IT IS SO ORDERED.**