### In re CANTON JUBILEE, INC., Debtor.

#### No. 98–61433.

United States Bankruptcy Court, E.D. Texas, Tyler Division.

Sept. 29, 2000.

Michael Geller, Dallas, TX, for Applicants.

Amy Bates, Jason R. Searcy, P.C., Longview, TX, for Chapter 7 Trustee.

## MEMORANDUM OF DECISION REGARDING APPLICATIONS FOR ADMINISTRATIVE EXPENSE FILED BY R.W. DEERING AND OTHER SHAREHOLDERS AND BY MICHAEL L. GELLER

BILL G. PARKER, Bankruptcy Judge.

Before the Court for consideration is the "Application Pursuant to Section 503(b) for Reimbursement of Expenses" filed by R.W. Deering and other shareholders of the Debtor (the "shareholder applicants"), as well as the "Application Pursuant to Section 503(b) for Payment of Fees and Reimbursement of Expenses" filed by Michael L. Geller (the "Debtor's attorney").[1] The shareholders seek reimbursement of certain expenses incurred during the administration of this case and

Mr. Geller seeks an award of professional compensation and reimbursement of certain expenses arising from his services as attorney for the reorganized Debtor both in the Chapter 11 phase of this case following the confirmation of the Debtor's plan of reorganization as well as in the period following the conversion of the case to Chapter 7. Jason Searcy, the duly-appointed Chapter 7 Trustee, has objected to certain portions of each application. The Court conducted a consolidated hearing on the respective applications on September 6, 2000 and took the matters under advisement following the hearing.

### I. JURISDICTION

This Court has jurisdiction to consider the applications pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). The Court has the authority to enter a final order regarding these contested matters since they each constitute a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (B) and (O).

### II. FACTUAL AND PROCEDURAL BACKGROUND

On July 2, 1998, the Debtor, Canton Jubilee, Inc., filed a voluntary petition under Chapter 11 in this Court. It subsequently proposed a plan of liquidation regarding its primary asset, consisting of certain improved real estate near Canton, Texas in which the Debtor formerly conducted its business operations. The Debtor's liquidation plan was confirmed on February 16, 1999 under which the Debtor was given until December 31, 1999 to sell substantially all of the Estate's assets and, if such sale was not consummated on or before December 31, 1999, the confirmation order provided that the case would be converted to Chapter 7 without further notice or hearing. The sale of the assets was not consummated by the stated deadline and the Court entered an order con-

---

1. Mr. Deering, Mr. Geller, and the shareholder applicants will occasionally be referenced collectively in this memorandum as the "Applicants."

verting the case to Chapter 7 on January 21, 2000. The sale of the assets was eventually completed after the conversion of the case to Chapter 7 and the Chapter 7 bankruptcy estate has realized sale proceeds which are available for distribution to creditors by Jason Searcy, the duly-appointed Chapter 7 trustee.

The shareholder-applicants assert that such sale proceeds would not have been realized by the Chapter 7 bankruptcy estate without their efforts and that their expenses should be reimbursed either as an actual, necessary cost and expense of preserving the estate under 11 U.S.C. § 503(b)(1)(A) or as an administrative expense arising from their substantial contribution to the case under 11 U.S.C. § 503(b)(3)(D). The Debtor's attorney, Mr. Geller, asserts that such an analysis equally applies to his professional compensation request, but he alternatively requests the approval of his fees and expenses under the more customary auspices of 11 U.S.C. § 330.

The Applicants further claim that, in the light of the circumstances surrounding the sale of the assets, which they argue would not have occurred without their continuing efforts, their administrative claims should properly be classified as Chapter 7 administrative expenses as opposed to Chapter 11 administrative expenses, notwithstanding the particular date upon which a particular service might have been actually rendered. The Chapter 7 Trustee has objected to such a classification scheme and further objects to certain reimbursement items, the necessity of which the Trustee asserts has not been properly demonstrated by the applicants.

2. § 507(a) of the Bankruptcy Code establishes that:

> [T]he following expenses and claims have priority in the following order:
> (1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

## III. DISCUSSION

### A. Administrative Expense Awards.

■ When assets of a bankruptcy estate are distributed to the creditors of a debtor, claims for administrative expenses are among the very first unsecured claims that are paid. 11 U.S.C. §§ 507(a)(1) and 726(a);[2] *In re Kadjevich*, 220 F.3d 1016, 1019 (9th Cir.2000). The "conceptual justification" for this payment priority status is that "creditors must pay for those expenses necessary to produce the distribution to which they are entitled." *Matter of H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir.1998), citing 3 DANIEL R. COWAN, BANKRUPTCY LAW AND PRACTICE § 12.23(e)(1), at p. 83 (6th ed.1994); *see also, Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1097 (9th Cir.1995)["Payment of administrative expenses allows the debtor to secure goods and services necessary to administer the estate, which ultimately accrues to the benefit of all creditors."].

§ 503(b) of the Bankruptcy Code provides a non-exhaustive list of the type of expenses which are entitled to such a priority status. Among those categories which can be denominated as an administrative expense pursuant to § 503(b) are:

> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case; ...
>
> ....
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection incurred by—

§ 726(a) of the Bankruptcy Code carries this priority status into the Chapter 7 distribution scheme by providing, in relevant part, that:
property of the [bankruptcy] estate shall be distributed—
(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title. . . .

(D) a creditor, an indenture trustee, [or] an equity security holder ... in making a substantial contribution in a case under chapter 9 or chapter 11 of this title; and

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant. . . .

 The statute is narrowly construed in order to hold administrative expenses to a minimum amount and thus preserve the estate assets for the benefit of all creditors. *In re Lovay*, 205 B.R. 85, 86 (Bankr.E.D.Tex.1997); *In re Templeton*, 154 B.R. 930, 934 (Bankr.W.D.Tex. 1993), and the burden of proof rests upon the administrative expense applicant to demonstrate that its cost or expense was actual and necessary. An "actual and necessary" cost or expense is one which conferred a benefit upon the bankruptcy estate. *Matter of H.L.S. Energy Co., Inc.*, 151 F.3d at 437 [finding that "the 'benefit' requirement ... is merely a way of testing whether a particular expense was truly 'necessary' to the estate ... if it was no 'benefit,' it cannot have been 'necessary.' "]; *In re Lovay*, 205 B.R. at 86 [finding that the benefit bestowed by a creditor must be "concrete" and not just a "mere possibility"]. Further, a cost or expense cannot be characterized as "necessary" unless it is reasonable when compared to the benefit realized by the bankruptcy estate. As stated by Chief Judge Sharp in *In re Express One Intern., Inc.*, 217 B.R. 207, 211 (Bankr.E.D.Tex.1998):

> In order to establish that the expenses involved were both actual and necessary, the claimant must demonstrate that the charge is a reasonable one for the value or benefit bestowed upon the bankrupt-

cy estate. It is axiomatic that unreasonable expenses, while they might be actual, would never be necessary.

 As for granting an administrative expense priority either under § 503(b)(3)(D) for reimbursement of actual, necessary expenses incurred by a creditor or equity security holder in making a "substantial contribution" to a Chapter 9 or 11 case, or under § 503(b)(4) for reasonable compensation to an attorney or accountant of such creditor or equity holder, such priority is awarded only for those services which "foster and enhance, rather than retard or interrupt the progress of reorganization." *Matter of DP Partners Ltd. Partnership*, 106 F.3d 667, 672 (5th Cir.1997). Thus, while such an applicant need not purge itself of any selfish intent in rendering such services nor give any advance warning of an intent to seek such an award, the applicant must still demonstrate that the contribution it made to the case was "considerable in amount, value or worth" and that the fees or expenses it incurred have a causal connection to its contribution and were reasonable when compared to the scope and breadth of the benefit which its contribution brought to the case. *Id.* at 673.

B. *Application by Shareholders.*

 Pursuant to § 503(b), a request for payment of an administrative expense must be filed timely. Although the Chapter 11 plan of reorganization was confirmed in this case in February, 1999, the § 503(b) application by the shareholders was not filed until May, 2000. However, the confirmed plan established no deadline for the presentation of administrative claims arising in the Chapter 11 case and no objection was raised by any party in interest to that omission. Further, all affected parties knew or should have known that the confirmed plan contemplated the marketing of the Debtor's primary asset for a period of one year and the ultimate conversion of the case to Chapter 7 in the event that a sale was not consummated in

that time period. No party can legitimately claim surprise or undue prejudice by the presentation of the administrative expense application at this time and, in light of the particular circumstances of this case, the Court finds that the request by the shareholders for the payment of an administrative expense was timely filed.

The shareholder application first requests a reimbursement of expenses to a specific shareholder, Roger W. Deering, in the amount of $3,488.62, which was comprised of the following elements:

| | |
|---|---|
| insurance payments on subject property | $2,409.19 |
| quarterly fees paid to U.S. Trustee on Debtor's behalf: | $1,000.00 |
| payment for copies | $ 57.52 |
| payment to Louisiana Department of Revenue | $ 10.58 |
| Federal Express expense | $ 11.33 |
| | $3,488.62 |

■ First, the applicants failed to fulfill their burden to demonstrate the benefit to the estate of the photocopy expenses and the Federal Express expense or the causal connection which such expenses had to the case and, thus, the request for an administrative expense for those expense reimbursements is denied.

As for each of the remaining expenses for which Mr. Deering seeks reimbursement as an administrative expense, no party contests the fact that such payments by Mr. Deering in the post-confirmation period, consisting primarily of the payment of insurance premiums and required quarterly fees, preserved for the benefit of all creditors the opportunity to market the property for an extended period of time. However, one might question whether a § 503(b)(1)(A) administrative expense can be properly awarded for services rendered in a post-confirmation period since, arguably, there was no bankruptcy estate to preserve following the confirmation of the

Debtor's liquidating plan in February, 1999. Obviously, if there was no bankruptcy estate to preserve following the confirmation of the Debtor's Chapter 11 plan, any cost or expense occurring in the post-confirmation, pre-conversion period obviously could not have been incurred by Mr. Deering for the purpose or with the result of "preserving the estate."

■ While it is true that the confirmation of a Chapter 11 plan in most cases terminates the existence of the bankruptcy estate by vesting the property in the reorganized debtor,[3] courts have also recognized that the vesting of property in the debtor under § 1141(b) (and, thus, the corresponding termination of the bankruptcy estate) is expressly subject to the terms and provisions of the confirmed plan, *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 587 (9th Cir.1993), *citing United States v. Unger*, 949 F.2d 231, 233 (8th Cir.1991), and that the confirmed plan need not state in explicit terms that the bankruptcy estate is to continue in existence.

In *Cunningham v. Healthco, Inc.*, 824 F.2d 1448 (5th Cir.1987), the Fifth Circuit found that the confirmation of a Chapter 11 plan, which did not absolutely vest in the reorganized debtor full title to and the right of control over existing property interests, but which instead subjected such property interests to the claims of creditors, triggered the exception under § 1141(b) and resulted in a continued administration of the bankruptcy estate. In that decision, the Circuit determined that, unless a plan leaves a reorganized debtor "free to deal with its property and the world as though it had never been subject to the jurisdiction of the bankruptcy

---

**3.** See 11 U.S.C. § 1141(b) which provides that:

"[E]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

Notwithstanding the apparent clarity of that provision, some courts have found that the

bankruptcy estate only ceases upon substantial consummation of a confirmed plan. *See, e.g., Falise v. American Tobacco Co.*, 241 B.R. 63, 65 (E.D.N.Y.1999) and *Portfolio Lease Funding Corp. v. Seagate Tech., Inc. (In re Atlantic Computer Sys., Inc.)*, 163 B.R. 704 (Bankr.S.D.N.Y.1994).

court," the administration of the estate continues in the post-confirmation period. *Id.* at 1460. [ultimately finding that, since the confirmation of the reorganization plan did not vest the debtor with title to specified causes of action, the debtor remained a "debtor-in-possession" even in the post-confirmation period, and therefore was entitled to utilize the tolling provisions of 11 U.S.C. § 108.] *See also, Hillis Motors,* 997 F.2d at 587 [the Ninth Circuit holding that, although the confirmed plan did not unambiguously state the proposition, the property of the estate did not revest in the debtor and that an allowance of a post-confirmation administrative expense under § 503(b)(1), while unusual, "would seem to be permissible where the estate continues after confirmation."]; and *Martin–Trigona v. Belford (In re Martin–Trigona),* 781 F.2d 36, 38 (2d Cir.1986)[finding that, under a plan which provided for payment to creditors from a sale of assets, no property reverted to the debtor]; *see also French Market Homestead, FSA v. P.C., Ltd. (In re Matter of P.C., Ltd.),* 929 F.2d 203, 204 (5th Cir.1991)[in which the Fifth Circuit "assumed without deciding" that creditors, whose debts arose in the post-confirmation but prior to the sale of a hotel as contemplated by the confirmed plan, were entitled to be treated as holders of administrative claims pursuant to 11 U.S.C. § 503(b).]

 It is clear in this case that neither the confirmed plan nor the confirmation order explicitly provided for the continuation of the bankruptcy estate. However, the confirmed plan clearly contemplated the liquidation of the primary asset of the estate and provided for the payment of all creditor claims from the proceeds of that sale. Not only did the primary asset continue to be subject to the claims of creditors in the post-confirmation period, the Debtor's control over that asset in that period was rigidly circumscribed by the terms of the confirmed plan. The Debtor clearly was not authorized under the confirmed plan to deal with the property "as though it had never been subject to

the jurisdiction of the bankruptcy court." Under such circumstances, the Court finds that the bankruptcy estate in this case continued to exist in the post-confirmation period and that, based upon the evidence presented, Mr. Deering is entitled, pursuant to § 503(b)(1)(A), to an administrative expense in the amount of $3,409.19 for reimbursement of actual, necessary costs and expenses of preserving the estate in this case.

 Even if the bankruptcy estate in this case had ceased to exist upon confirmation of the plan, thus precluding the award of an administrative expense under § 503(b)(1)(A), the expenses for which Mr. Deering seeks an allowance of an administrative expense also qualify for that priority status as a "substantial contribution" under § 503(b)(3)(D). These expenses were incurred by Mr. Deering in the post-confirmation, pre-conversion phase of this case as the Debtor's property was being marketed to prospective buyers. It is uncontroverted that his payment of premiums to maintain casualty insurance on the Debtor's property during the marketing process and his payment of the quarterly fees required under 28 U.S.C. § 1930 during that period were instrumental in maintaining an environment under which continued progress toward the eventual sale of the property in the case could be realized, though the sale was not actually consummated until after the conversion of the case to Chapter 7. No one has disputed the fact that, absent these expenditures, the ultimate sale of the property would not have been realized. As the Fifth Circuit has recognized, the parameters of a substantial contribution is best determined "on a case-by-case basis," *Matter of DP Partners ' Ltd. Partnership,* 106 F.3d at 673. Under the circumstances of this case, the Court finds that the insurance and quarterly fee payments of $3,409.19 made by Mr. Deering in the post-confirmation, pre-conversion period constitute actual, necessary expenses incurred by an equity security holder in making a substantial

contribution in this case and are thus entitled to be paid as an administrative expense.

The shareholder application also requests a reimbursement of expenses to the Debtor's shareholders in the amount of $1,221.70, comprised of the following elements:

| | |
|---|---|
| filing fee for subordination complaint | $ 150.00 |
| quarterly fees paid to U.S. Trustee on Debtor's behalf | $ 250.00 |
| costs pertaining to deposition of Ivan Carlson | $ 821.70 |
| | $1,221.70 |

However, according to the evidence presented, these three expenses were actually paid by Michael Geller, in his capacity as the attorney for the Debtor–in–Possession in November and December, 1998. Absent a circumstance under which the attorney for the Debtor–in–Possession received undisclosed and improper post-petition payments from the Debtor's shareholders, these three expenses were not actually incurred by the Debtor's shareholders and, accordingly, the request for reimbursement of these expenses to the Debtor's shareholders is denied.

### C. *Application by Michael L. Geller.*

■ The "Application Pursuant to Section 503(b) for Payment of Fees and Reimbursement of Expenses" filed by Michael L. Geller, in his capacity as the attorney for the Debtor, seeks an award of compensation in the amount of $ 336.00 and expense reimbursement in the amount of $3.32 for services rendered in the post-confirmation period preceding the conversion of this case to Chapter 7, as well as an award of compensation in the amount of $4,128.00 for services rendered in the post-conversion period. While the Chapter 7 Trustee did not contest the application as it pertained to pre-conversion services, the Trustee did object to any award of attorneys' fees to Mr. Geller for services rendered after the conversion of the case to Chapter 7 in reliance upon the Fifth Circuit's decision in *Andrews & Kurth, L.L.P. v. Family Snacks, Inc. (Matter of Pro–Snax Distributors, Inc.),* 157 F.3d 414 (5th Cir.1998).

In *Pro–Snax,* the Fifth Circuit held that the plain meaning of § 330(a)(1) precluded an award of compensation to a debtor's attorney for services rendered after the appointment of a Chapter 11 trustee in the case. The Circuit found that, once a Chapter 11 trustee is appointed in a case, thereby stripping the debtor of its debtor-in-possession status, then the attorney for the former debtor-in-possession from that moment in time is likewise stripped of his status as a "professional person" entitled to compensation from the estate because § 330(a)(1) no longer contains a reference to "debtor's attorney" in its list of compensable persons. The Circuit felt

> ... bound by our conventions of statutory construction, even though common sense might lead the lay observer to conclude that a different result is perhaps more appropriate. The law, and the rule to which we adhere in order to interpret it, does not always conform to the dictates of common sense. In this case, we are faced with a statute which is clear on its face. It excludes attorneys from its catalog of professional officers of a bankruptcy estate who may be compensated for their work after the appointment of a Chapter 11 trustee. Although the legislative history and, indeed, a brief syntactical evaluation of the clause at issue suggest that Congress inadvertently neglected to include attorneys, our canons of construction do not require—nay, do not permit—us to consider these exogenous sources when the statute is clear textually on its face.... [I]n the absence of any ambiguity, our examination is confined to the words of the statute, which are assumed to carry their ordinary meaning. Recourse to the legislative history is unnecessary in light of the plain meaning of this text.

157 F.3d at 425 (citations omitted).

This Court has in earlier unpublished decisions reluctantly felt compelled to ap-

ply the *Pro–Snax* analysis to preclude any payment from an estate to a debtor's attorney for certain services rendered after the conversion of a pre-confirmation Chapter 11 case to Chapter 7, even though the estate clearly benefitted from such services. The Court can fathom no defensible reason as to why that rationale is not equally applicable to post-confirmation conversions. Thus, this Court is precluded from awarding any compensation from the estate to Mr. Geller under § 330(a) of the Bankruptcy Code for the post-conversion services he rendered, notwithstanding the fact that the estate might not have realized the sale proceeds which are currently available for distribution without the rendition of such services.

■ Mr. Geller alternatively suggests that his claim for professional services in the post-conversion period can be considered for administrative expense status as an "actual, necessary expense of preserving the estate" under § 503(b)(1)(A).[4] However, it is clear that § 503(b)(1)(A) cannot serve as a basis for awarding fees to professionals. *See, e.g., F/S Airlease II, Inc. v. Simon,* 844 F.2d 99 (3rd Cir.1988); *In re Weibel, Inc.,* 176 B.R. 209 (9th Cir. BAP 1994); and *In re Concrete Products, Inc.,* 208 B.R. 1000 (Bankr.S.D.Ga.1996). In explaining the rationale as to why professional compensation cannot be considered for administrative expense priority under § 503(b)(1)(A), the court in the *Concrete Products* case noted that:

> [T]he rationale is clear. To apply Section 503(b)(1) to professional compensation would make the language of Sections 503(b)(2) superfluous. Congress enacted Sections 327, 330(a), and 503(b)(2) to provide the exclusive method for a debtor's retention of professionals, subject to numerous safeguards, including the requirement of disinterestedness. A court should not circumvent

the limitations placed on retention of professionals by compensating a disqualified professional under Section 503(b)(1)(A). Instead, Section [503](b)(1)(A) is properly applicable only to authorize priority treatment of non-professional employee claims, including wages, salaries and commissions.... In the compensation context, however, it [503(b)(1) priority status] must be limited to non-professional services of regularly employed persons, or Sections 503(b)(2), 330 and 327 are eviscerated.

*Concrete Products, Inc.,* 208 B.R. at 1010. Accordingly, the Court must deny the request of Mr. Geller for compensation from the estate for post-conversion services.

■ As for the professional services rendered by Mr. Geller in the post-confirmation period prior to the conversion of the case to Chapter 7, the Court must again reject Mr. Geller's contention that his claim for professional services in that particular period can be considered for administrative expense status as an "actual, necessary expense of preserving the estate" under § 503(b)(1)(A). However, unlike the post-conversion services, the Court believes that, because the bankruptcy estate in this case continued to exist in the post-confirmation period and in light of the Fifth Circuit's holding in *Cunningham v. Healthco, Inc.,* the legal services rendered by Mr. Geller in the post-confirmation, pre-conversion period were still being rendered by a "professional person employed under section 327" and thus are compensable under 11 U.S.C. § 330. As acknowledged earlier, the confirmed plan of liquidation restricted the Debtor's control over its primary asset and compelled the Debtor to proceed with all deliberate speed to pursue the sale of that asset in order to provide for the payment of all creditor claims. That mandate required the rendition of professional services

---

4. Geller's application cannot be properly considered under § 503(b)(4) either since his professional services were not rendered on behalf of an "entity whose expense is allowable un-

der [§ 503(b)(3)]." *See, In re American Preferred Prescription, Inc.,* 194 B.R. 721, 723–24 (Bankr.E.D.N.Y.1996).

which, in fact, inured more to the benefit of the creditor body than to the liquidating debtor. Further, unlike the *Pro–Snax* scenario, there had been no displacement of the debtor-in-possession by a trustee. Accordingly, the Court's consideration of Mr. Geller's application for compensation pertaining to post-confirmation, pre-conversion services is proper under 11 U.S.C. § 330 and the Court finds, upon its review of that portion of the application, that the services and expenses outlined therein were actual, reasonable and necessary and should be awarded in full.

D. *Priority of Administrative Expenses.*

■ In the context of a case which has been converted from Chapter 11 to Chapter 7, 11 U.S.C. § 726(b)[5] provides that the administrative expenses of a subsequent chapter 7 case have a priority over administrative expenses of a prior chapter 11. *In re Tel–Central Communications, Inc.*, 212 B.R. 342, 347 (Bankr.W.D.Mo. 1997), *citing In re Mel–Hart Products Inc.*, 136 B.R. 197, 199 (Bankr.E.D.Ark. 1991). As explained by the bankruptcy court in *In re Printcrafters, Inc.*, 208 B.R. 968, 972–73 (Bankr.D.Colo.1997)

[A]fter conversion, Chapter 11 administrative claims are subordinated to subsequent Chapter 7 administrative claims in order to assure sufficient funds for the liquidation and so-called "burial expenses" incurred in the Chapter 7 phase of the case. The super-priority status for the so-called "burial expenses" after the conversion was intended to provide an incentive to encourage capable trustees and professionals to act in superseding cases. This purpose would be negat-

ed if liquidating administrative expenses of an aborted Chapter 11 case could also qualify for super-priority status in a converted Chapter 7 case.

Nevertheless, both of the successful applicants claim that, in the light of the eventual sale of the assets, which they argue would not have occurred without their continuing efforts, their administrative claims should properly be classified as Chapter 7 administrative expenses as opposed to Chapter 11 administrative expenses. Not surprisingly, they have provided to the Court no jurisprudence supporting such a metamorphosis. It should be apparent that, notwithstanding the relative worth of the contribution made by these applicants to this sale, this Court cannot unilaterally reorder the priority scheme for administrative claims imposed by 11 U.S.C. § 726(b). *In re Printcrafters, Inc.*, 208 B.R. at 973. ["Bankruptcy courts are not free to rearrange Congress' priorities for the treatment of creditors based on equitable grounds, except by application of § 510 to the claim of a particular creditor", *citing United States v. Noland*, 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) ]. Accordingly, the amounts awarded to Messrs. Deering and Geller shall each be respectively paid as a Chapter 11 administrative expense in the priority prescribed for pre-conversion administrative expenses by § 726(b) of the Bankruptcy Code.

## IV. CONCLUSION

For the reasons stated above, Roger W. Deering is hereby awarded the sum of $3,409.19, pursuant to 11 U.S.C. §§ 503(b)(1)(A) and (b)(3)(D) which shall

---

5. Section 726(b) provides that:
Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7) or (8) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1009[sic], 1112, 1208, or 1307

of this title, **a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion** and over any expenses of a custodian superseded under section 543 of this title. (emphasis added).

be paid as a Chapter 11 administrative expense in the priority prescribed for pre-conversion administrative expenses by § 726(b) of the Bankruptcy Code. Further, Michael L. Geller is hereby awarded the sum of $336.00 as reasonable compensation for actual and necessary services rendered and reimbursement of actual and necessary expenses in the amount of $3.32, for a total award of $339.32, pursuant to 11 U.S.C. §§ 330(a) and 503(b)(2), which shall also be paid as a Chapter 11 administrative expense in the priority prescribed for pre-conversion administrative expenses by § 726(b) of the Bankruptcy Code.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[6] pursuant to Fed.R.Civ.P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr.P. 7052 and 9014. Separate orders pertaining to each application will be entered which is consistent with this opinion.

---

**6.** To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.