# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-11186
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2015

Lyle W. Cayce
Clerk

In the Matter of: BODIN CONCRETE,  L.P.

      Debtor

-----------------------------------------------------------

BODIN CONCRETE,  L.P.,

      Appellant

v.

CONCRETE OPPORTUNITY FUND II, L.L.C.,

      Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC 3:14-CV-1695

Before STEWART, Chief Judge, and PRADO and HAYNES, Circuit Judges.

PER CURIAM:*

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-11186

The Bankruptcy Court in this case awarded Appellee a fee for substantially contributing to the Debtor's bankruptcy case under 11 U.S.C. § 503(b)(4). Appellant challenges this award. We affirm.

**I**

On September 1, 2012, Appellant Bodin Concrete, L.P. (Debtor or Bodin) filed for chapter 11 bankruptcy. Over a year later, on October 30, 2013, after the Debtor sold most of its assets, it filed a plan of reorganization (Original Plan) proposing to pay fifty percent of the unsecured claims within thirty days of the effective date of the plan and the remainder over the next five years. On November 20, 2013, two creditors who did not intend to vote in favor of the Original Plan, Blue Star Materials LLC and Buzzi Unicem USA, filed a motion to convert the Debtor's case to a chapter 7 or dismiss the case under 11 U.S.C. § 1112(b). After becoming a creditor in this case by purchasing a small claim, on December 6, 2013, Appellee Concrete Opportunity Fund II, LLC (Concrete) filed an objection to the Debtor's disclosure statement. On December 9, 2013, Concrete proposed its own plan of reorganization that would pay seventy-five percent of unsecured claims within ten days of the effective date and the remaining balance seventy-five days later. This plan also included a cash infusion of $750,000.

Also on December 9, 2013, the Debtor filed an amended plan that would pay sixty-five percent of the unsecured claims within ten days of the effective date and the remainder over five years. On December 18, 2013, the Debtor again filed an amended plan, this time proposing to pay 100 percent of unsecured claims within one day of the effective date and included a $660,000 cash infusion. Finally, on January 22, 2014, the Debtor filed a third amended plan (Final Plan), which proposed to pay 100 percent of unsecured claims within one day of the effective date but also included a cash infusion of

2

No. 14-11186

$750,000, matching Concrete's competing plan.  The Final Plan was confirmed on March 7, 2014.

On January 17, 2014, Concrete filed an application for reimbursement of legal fees and expenses for substantial contribution under 11 U.S.C. § 503(b)(4), Bodin objected, and an evidentiary hearing was held on February 25, 2014.  Finding that Concrete substantially contributed to the case, the Bankruptcy Court overruled the objection and awarded Concrete an allowed administrative expense claim of $50,000, roughly two-thirds of the requested amount.  The District Court affirmed this award, and Bodin timely appealed.

## II

On appeal, Bodin argues that the Bankruptcy Court erred by: (1) allowing Concrete's attorney to testify at the evidentiary hearing, and (2) finding that Concrete substantially contributed to the case.  We review appeals from the bankruptcy court in the same manner as the district court: "Fact findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed *de novo*."  *In re Soileau*, 488 F.3d 302, 305 (5th Cir. 2007) (internal quotation marks and citation omitted).

Debtor argues that the Bankruptcy Court erred by allowing Trey Monsour, Concrete's attorney, to testify at the evidentiary hearing on substantial contribution because he lacked sufficient personal knowledge of this issue and was not qualified as an expert.  We review evidentiary determinations for abuse of discretion and we will only "vacate a judgment based on an error in an evidentiary ruling . . . [if] the substantial rights of the parties were affected."  *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 370 (5th Cir. 2000) (internal quotation marks and citation omitted); Fed. R. Evid. 103(a); *see also In re Pequeno*, 223 F. App'x 307, 308 (5th Cir. 2007) (per curiam) ("In an appeal based on an evidentiary ruling of the Bankruptcy Court, an appellant must prove both: (1) that the Bankruptcy Court abused its discretion;

No. 14-11186

and (2) that the appellant's substantial rights were prejudiced." (citation omitted)). While Monsour did not have personal knowledge of events that transpired in the case before Concrete purchased a claim and retained Monsour, Monsour testified concerning Concrete's actions in the case after his retention, such as efforts by Concrete via Rule 2004 examination[1] to obtain documentation from the Debtor, the various plans proposed by Concrete and the Debtor, and the amount and reasonableness of Concrete's fees. Even though Monsour was not designated as an expert, his testimony related to his personal knowledge of the contributions of Concrete to the case after his retention, and the Bankruptcy Court was within its discretion in allowing this testimony from Monsour.

Bodin next argues that the Bankruptcy Court erred in awarding a substantial contribution fee to Concrete. "The inquiry regarding a substantial contribution is one of fact." *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir. 1986). As such, we review this determination for clear error. *Soileau*, 488 F.3d at 305; *see also In re DP Partners Ltd.*, 106 F.3d 667, 673−74 (5th Cir. 1997) ("Necessarily, the bankruptcy court enjoys broad discretion in making these determinations." (citation omitted)). We cannot say the Bankruptcy Court clearly erred in determining that Concrete substantially contributed to the case. While substantial contribution is not statutorily defined, we have stated that "services which make a substantial contribution are those which foster and enhance, rather than retard or interrupt the progress of reorganization." *DP Partners*, 106 F.3d at 672 (internal quotation marks and citation omitted). Further, a substantial contribution must be "considerable in amount, value or worth." *Id.* at 673 (internal quotation marks and citation

---

[1] Under Federal Rule of Bankruptcy Procedure 2004, upon motion by a party in interest, "the court may order the examination of any entity."

omitted). While the determination of "substantial contribution is best left on a case-by-case basis, . . . [a]t a minimum . . . the [bankruptcy] court should weigh the cost of the claimed fees and expenses against the benefits conferred upon the estate which flow directly from those actions" when the "[b]enefits flow[] to only a portion of the estate or to limited classes of creditors." *Id.* When this is the case, the benefits should be "necessarily diminished in weight." *Id.* Further, "to aid the district and appellate courts in the review process, bankruptcy judges should make specific and detailed findings on the substantial contribution issue." *Id.*

The Bankruptcy Court, which presided over the Debtor's entire case, found that Concrete "provided direct and demonstrable benefits to th[e] estate." By its actions in the case, chiefly proposing an alternate plan, the Bankruptcy Court found that Concrete "put[] pressure on the debtor to get its plan approved and fulfill its promises under the plan." Otherwise, Concrete's proposed plan could have replaced the Debtor's. The Bankruptcy Court found the timeline of events probative of Concrete's contribution. More specifically, the timeline indicated that the Debtor was unable to propose a satisfactory plan during the exclusivity period. Concrete's actions in the case motivated the Debtor to amend its plan.

In making the substantial contribution determination, the Bankruptcy Court considered evidence regarding the value to the creditors under the Original and Final Plans, but Bodin argues that the Bankruptcy Court was required to quantify the precise benefit created by Concrete's involvement in the case by looking at the present value to creditors of each plan and weighing this against the costs. Essentially, Bodin claims the Bankruptcy Court erred by not determining the exact dollar value of the benefit created by Concrete's involvement using a present value comparison of the two plans. However, the court considered the differences in the two plans and concluded that the Final

Plan provided cash to the unsecured creditors on the effective date of the plan, eliminating the need for a five-year payout.  The court stated that it was unquestionable that cash today was more valuable to the creditors than the payout proposed by the Original Plan.  While the Bankruptcy Court did not make a finding of the specific dollar value difference in the two plans, its consideration of the differing natures of the two plans was sufficient "specific and detailed findings" to support its award of a substantial contribution.  *DP Partners*, 106 F.3d at 673.

Further, we have recognized that while some actions may result in "benefit[s] that often can be measured by the actual cost of necessary goods or services supplied," there may be "less readily calculable benefits" conferred to the estate, "such as the ability to continue to conduct business as usual."  *In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992).  Here, after the expiration of exclusivity, Concrete's involvement in the case put pressure on the Debtor to propose a more favorable plan that was confirmable and provided a greater return for the estate.  Concrete's actions benefitted all unsecured creditors in the case, and the Bankruptcy Court was not required to trace the benefit to limited classes of creditors in order to accord it diminished weight.  *Cf. DP Partners*, 106 F.3d at 673.  Thus, the Bankruptcy Court did not clearly err in awarding Concrete $50,000 in fees for substantially contributing to the Debtor's case.

For the foregoing reasons, we AFFIRM.