In re CELLULAR 101, INC., Debtor,

Cellular 101, Inc., Appellant,

v.

Channel Communications, Inc.; John Price, Appellees.

No. 02–56772.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2004.

Filed July 28, 2004.

---

Timothy J. Trager, Santa Barbara, CA, for the appellant.

Victoria S. Kaufman, Los Angeles, CA, for the appellees.

Before: B. FLETCHER, PREGERSON, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellant, Cellular 101, Inc. ("Cellular"), appeals from an order of the district court affirming the bankruptcy court's grant of Channel Communications, Inc. ("Channel") and John Price's ("Price") administrative expense claim filed pursuant to 11 U.S.C. § 503(b). On appeal Cellular asserts that Channel and Price did not satisfy the basic requirements of § 503(b) and that, in the alternative, their claim must fail because they acted in their own interest. We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we affirm.

## FACTS AND PROCEEDINGS BELOW

### A. Background

AT & T Wireless of Santa Barbara ("AT & T") is a provider of wireless services throughout Santa Barbara County. Channel was an authorized dealer of AT & T services in the area and was completely owned by Price and his wife. Cellular was operating as an agent of Channel in the capacity of an AT & T subdealer.

Over the past few years these parties have not had the most cordial of dealings. On numerous occasions AT & T complained that Channel and Cellular engaged in business practices of which AT & T disapproved. Because of these practices, AT & T threatened to terminate the contract it had with Channel. To sever this contentious relationship, Channel, or more accurately, Price, was willing to sell the business to AT & T.

One obstacle stood in the way of Channel's sale arrangement with AT & T. Cellular had an agency agreement with Channel and Price that afforded it the right of first refusal if Price sold his stock or substantially all of Channel's assets. The terms of Price and Channel's proposed sale of stock to AT & T, however, did not provide for Cellular's exercise of its right of first refusal. In addition to filing suit to preserve that right of first refusal, Cellular, through its principal, Patrick Lowery, also filed suit against AT & T in California state court alleging interference with his business. Ultimately, in order to prevent the trans-

action from closing without its consent, Cellular filed a Chapter 11 petition.

## B. *The Bankruptcy Proceedings*

During the bankruptcy proceedings Cellular did not make an effort to reorganize. Channel, Price, and AT & T filed a joint plan of reorganization after the expiration of the statutory period of plan exclusivity. The proposed plan included (1) the sale of 80% of Channel stock to AT & T, (2) Cellular's ability to continue its lawsuit against AT & T, (3) Channel's and Price's waiver of their prepetition claims against Cellular, and (4) the payment to Cellular of $1,992,959 by Price from the sale proceeds. The $1,992,959 figure was purported to be equal to the amount Cellular would have been entitled to under its contract with Channel. This amount was also purported to be adequate to pay all the claims against the estate with some residue remaining for Lowery.

Cellular objected to Channel, Price, and AT & T's reorganization plan. Cellular argued it would lose millions of dollars if the court approved the plan. The bankruptcy court, however, concluded that this was a "compromise of controversies" and was a good plan for all parties involved. In fact, the court stated that "it became increasingly clear to me as the hearing progressed that Cellular was going to receive under the plan as much or almost as much as it could reasonably expect if all issues were litigated to completion before a jury, and without the substantial risk of total failure." The bankruptcy court approved the plan.

## C. *The Appellees' Motion for an Administrative Priority Claim*

In March 2001, Channel and Price filed the underlying administrative claim pursuant to 11 U.S.C. § 503(b). They requested $495,252.83 for attorneys' fees and costs.

The bankruptcy court reduced the amount to $206,317.60 ($175,000 in attorneys' fees and $31,317.60 in expenses) because of duplicative travel, lodging, secretarial overtime, and word processing expenses as well as because of Price's deceptive behavior in his dealings with subdealers. The district court affirmed the bankruptcy court's order and Cellular filed this timely appeal.

## STANDARD OF REVIEW

The role of the district court and this court is essentially the same in the bankruptcy appellate process; accordingly, we review the bankruptcy court's decision directly. *Christian Life Ctr. Litig. Def. Comm. v. Silva (In re Christian Life Ctr.)*, 821 F.2d 1370, 1373 (9th Cir.1987). We review a bankruptcy court's findings of fact under a "clearly erroneous" standard, *Kupetz v. Elaine Monroe Assocs., Inc. (In re Wolf & Vine)*, 825 F.2d 197, 199 (9th Cir.1987), and a bankruptcy court's interpretation of 11 U.S.C. § 503(b) de novo. *In re Christian Life Ctr.*, 821 F.2d at 1373.

## ANALYSIS

### A. *11 U.S.C. § 503(b)'s Requirements*

Central to this appeal is whether the bankruptcy court erred by granting Channel and Price's administrative claim filed pursuant to 11 U.S.C. § 503(b). Section 503(b) provides in pertinent part:

> After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> . . .
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>
> . . .

(D) a creditor ... in making a substantial contribution in a case under Chapter 9 or 11 of this title;

...

(4) reasonable compensation for professional services rendered by an attorney ... of an entity whose expense is allowed under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney....

11 U.S.C. § 503(b) (2003).

Cellular rightly asserts that two things are required to recover on a § 503(b) administrative claim. First, the claimant must be a creditor of the estate. Second, the creditor must have made a "substantial contribution" to the bankruptcy plan. Cellular argues that the bankruptcy court erred in granting Channel and Price's claim because neither Price nor Channel met both of these requirements. Cellular asserts that Price was not a creditor of the estate and that Channel did not substantially contribute to the reorganization plan. These arguments fail on review of the record.

■■■ The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor." 11 U.S.C. § 101(10) (2003). The Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, *disputed,* undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5) (2003) (emphasis added). Accordingly, a "creditor" can include an entity that has a "disputed" right to payment from the debtor. Price fits within the Bankruptcy Code's definition of creditor because he filed a Joint Proof of Claim

with Channel against Cellular based on a contract that he signed with Cellular. Because Price signed the agreement in his individual capacity, he has, at a minimum, a "disputed" right to payment. The Joint Proof of Claim provides in part:

Channel Communications, Inc. ("Channel"), and/or John Price ("Price") (collectively "Claimants") ... creditors of Cellular 101 Corporation ("Debtor"), by and through their attorneys of record in this Chapter 11 case, hereby make this Proof of Claim ...

Channel and/or Price have a presently unliquidated claim against the Debtor for damages arising from the Debtor's breach of the Contract, including such damages arising from Debtor's conduct which impairs Channel's rights, benefits and interests under the Agency Agreement between Channel and Santa Barbara Cellular Services, Ltd. ("SBCS").

Because both Channel and Price had a disputed right to payment against Cellular based on the agency agreement entered into with Cellular, they are both considered "creditors" under the Bankruptcy Code. Moreover, Cellular filed no objection to Price's being a creditor. While it is true that Cellular stated it disputed the Joint Proof of Claim, Cellular never formally objected to Price being a creditor and the claim was never disallowed.

■■■ Cellular's assertion that the bankruptcy court's grant of the administrative claim was in error because Channel did not make a "substantial contribution" to the reorganization is similarly unpersuasive. This court has stated that the principal test of substantial contribution is "the extent of benefit to the estate." *In re Christian Life Ctr.,* 821 F.2d at 1373; *see also Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.),* 785 F.2d 1249, 1253 (5th Cir.1986) (reaffirming that

"services which substantially contribute to a case are those which foster and enhance, rather than retard or interrupt the progress o[f] reorganization").

■ The facts presented demonstrate that both Channel and Price substantially contributed to the reorganization. Channel and Price formulated and presented the only reorganization plan that was put forth to the bankruptcy court. This plan resulted in the payment to creditors of 100% of the creditors' allowed claims with funds remaining for the equity security holders. Channel and Price also agreed to waive their prepetition claims against Cellular. While it is true that Channel did not provide money for the plan, a creditor need not provide the funds used in the reorganization in order to "substantially contribute" to the plan. *See* S.Rep. No. 95–598, at 66–67 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5852–53 ("The phrase 'substantial contribution in a case' . . . does not require a contribution that leads to confirmation of a plan, for in many cases, it will be a substantial contribution if the person involved uncovers facts that would lead to a denial of confirmation . . ."); *see also In re McLean Indus., Inc.*, 88 B.R. 36, 39 (Bankr.S.D.N.Y.1988) (finding the creditor provided a substantial contribution to the estate by objecting to the sale of the debtor's subsidiary stock). Here, Channel substantially contributed to the estate by developing the only plan that was presented to the bankruptcy court and by waiving its prepetition claim.[1]

B. *Self Interest*

Cellular also argues that Channel and Price may not recover on their § 503(b) claim because they acted in their own self-interest in proposing a reorganization plan. There appears to be a conflict among the circuits as to whether a creditor's self-interest is important to the § 503(b) analysis. *Compare, Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1338 (11th Cir.2000) ("Examining a creditor's intent unnecessarily complicates the analysis of whether a contribution of considerable value or worth has been made."); *and Hall Fin. Group v. DP Partners, Ltd. P'ship (In re DP Partners Ltd. P'ship)*, 106 F.3d 667, 673 (5th Cir.1997) (holding that "a creditor's motive in taking actions that benefit the estate has little relevance in the determination whether the creditor has incurred actual and necessary expenses in making a substantial contribution to a case."), *cert. denied*, 522 U.S. 815, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997); *with Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir.1994) (holding that " 'substantial contribution' should be applied in a manner that excludes reimbursement in connection with activities of creditors . . . which are designed primarily to serve their own interests."); *and Haskins v. United States (In re Lister)*, 846 F.2d 55, 57 (10th Cir.1988) ("Efforts undertaken by a creditor solely to further his own self-interest . . . will not be compensable, notwithstanding any incidental benefit accruing to the bankruptcy estate."). We decline to choose between these competing approaches because we need not decide whether a creditor's motivation may ever be relevant or dispositive in order to resolve this case. Any concern we have about evidence that Channel and Price benefitted from their own efforts is outweighed by the extent of the benefit those

---

1. Because we affirm the decision to grant Channel's claim, we note that the practical result in this case would be the same even if Price were not a creditor. The administrative expenses at issue are attorneys' fees and costs owed to the law firm that represented Price and Channel. The firm does not appear to have divided its billing records between Price and Channel, and Channel could likely have recovered the entire amount on its own claim.

efforts conferred on the estate. *Cf. In re Christian Life Ctr.*, 821 F.2d at 1373.

■ As even the Third Circuit has recognized, "[m]ost activities of an interested party that contribute to the estate will also ... benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement." *Lebron*, 27 F.3d at 944. Channel and Price contributed substantially to the reorganization, not "incidentally" or "minimally." *In re Lister*, 846 F.2d at 57. The bankruptcy court did not err in approving the Channel and Price administrative claim.

AFFIRMED.

BRUNETTI, Circuit Judge, concurring.

I write a separate concurrence because on the facts of this case I would go one step further and hold that a creditor's motivation is not dispositive or even relevant in deciding whether to grant a § 503(b) claim.

When interpreting a statute, "[o]ur first step ... is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). This court's inquiry must end if the statutory language is unambiguous and "the statutory scheme is coherent and consistent." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If the text of the statute includes undefined terms—as is the situation here where Congress failed to fully define "substantial contribution"—we construe those terms to have their ordinary meanings. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). When the plain language of the statute can be interpreted in more than one way, the court must determine the more plausible interpretation of the language Congress chose. *United States v.*

*Hohri*, 482 U.S. 64, 70, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987).

As noted in the opinion, § 503(b)(3) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses including the actual, necessary expenses ... incurred by ... a creditor ... in making a substantial contribution in a case under Chapter 9 or 11 of this title." Nothing in § 503(b) indicates that a creditor's motivation has any relevance in whether the creditor can recover fees and expenses under § 503(b). *Hall Fin. Group v. DP Partners Ltd. P'ship (In re DP Partners Ltd. P'ship)*, 106 F.3d 667, 673 (5th Cir.1997) (noting that "nothing in the Bankruptcy Code requires a self-deprecating, altruistic intent as a prerequisite to recovery of fees and expenses under section 503.").

Moreover, the legislative record gives no indication that a creditor's motivation must be taken into consideration when determining if a "substantial contribution" has been made. The term "substantial contribution" is derived from Bankruptcy Act sections 242 and 243 [section 642 and 643 of former title 11]. S. Report No. 95–598, at 66–67 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5852–53. Sections 642 and 643, like § 503(b), make no mention of the creditor's motivation for contributing to the plan. Former § 643 provides that, "the judge shall give consideration only to the services which contributed to the plan confirmed or to the refusal of confirmation of a plan, or which were beneficial in the administration of the estate." Similarly, the legislative history of § 503 is silent on prohibiting self-interested creditors from being reimbursed for expenses. S.Rep. No. 95–598, at 66–67 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5852–53; H.R.Rep. No. 95–595, at 355 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6311.

As the Fifth Circuit noted, "if Congress intended to withhold reimbursement for administrative expenses under these circumstances, at least some indication of that intent would appear in the statute or its legislative history." *In re DP Partners Ltd. P'ship*, 106 F.3d at 673, n. 24.

Lastly, this interpretation of § 503(b) is the most plausible interpretation of the language Congress chose. Congress included creditors in the class of those who may receive administrative expenses and fees for substantially contributing to a bankruptcy plan. *See* 11 U.S.C. § 503(b)(3). It would be the unique creditor indeed who would not be motivated by self-interest when becoming involved in a bankruptcy proceeding. Because there is no indication that a creditor's motivation plays any role in whether a creditor can recover under § 503(b), I would not add that altruistic requirement into the statute. To do so would read into the statute words that are not there and a prohibition on recovery that was not intended.