**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: CELLULAR 101, INC.,
                        *Debtor,*

PATRICK T. LOWERY; CELLULAR
101, INC.,
                        *Appellants,*

v.

CHANNEL COMMUNICATIONS, INC.;
JOHN PRICE; UNITED STATES
TRUSTEE,

                        *Appellees.*

No. 06-55779

BAP No.
CC-05-01093-HBK

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Klein, Brandt, and Haines, Bankruptcy Judges

Argued and Submitted
February 15, 2008—Pasadena, California

Filed August 21, 2008

Before: Stephen S. Trott, Richard R. Clifton, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Clifton

11311

**COUNSEL**

Timothy J. Lowery (argued); William E. Winfield, Susan M. Seemiller, Nordman Cormany Hair & Compton LLP, Oxnard, California, for the appellants.

Kenneth P. Roberts (argued), Kenneth P. Roberts, APLC, Woodland Hills, California, for the appellees.

**OPINION**

CLIFTON, Circuit Judge:

The question posed by this case is whether a party's failure to timely inform the court of appeals of a settlement that it

believes disposes of a pending appeal precludes the party from asserting the affirmative defense of settlement and release in a later proceeding. Over its objection, Chapter 11 debtor Cellular 101, Inc. was ordered to pay an administrative claim of approximately $200,000. Cellular 101 appealed the order to this court. While the appeal was pending, Cellular 101 entered into a settlement agreement that it believed released the claim. Rather than advise the court of appeals of the settlement, though, Cellular 101 continued to pursue its appeal on other grounds. That effort proved unsuccessful, as we affirmed the award. After it lost on appeal, Cellular 101 tried to fend off payment of the award by raising a settlement and release defense. The bankruptcy court and the Bankruptcy Appellate Panel (BAP) both concluded that it was too late for Cellular 101 to unveil that argument and ordered disbursement of funds to pay the administrative claim. We agree and affirm, answering "Yes" to the question posed above.

## I.   Background

This case arises out of a bankruptcy court order in 2001 awarding $206,317.60 to Channel Communications, Inc. and John Price from the estate of Cellular 101, for attorneys' fees and costs incurred in connection with Cellular 101's Chapter 11 proceedings. The details of that award are not necessary for resolution of the current appeal, but some understanding of the relationship among the players and the genesis of the award may be helpful.

As its name suggests, Cellular 101 sold wireless telephone services and equipment in Santa Barbara, California. It did so as an agent of Channel, which was an authorized AT&T wireless services dealer. Cellular 101 was thus a subdealer of AT&T wireless services in the area. At the time the relevant events began, Channel was entirely owned by John Price and his wife. Cellular 101 had a right of first refusal if Price sold Channel.

AT&T sought to terminate its contract with Channel, complaining that Channel and Cellular 101 engaged in improper business practices. To resolve their dispute, Price and AT&T agreed that Price would sell a controlling interest in Channel to AT&T. AT&T and Channel took the position that the sale would not trigger Cellular 101's right of first refusal because it would involve a transfer of only 80 percent of Channel's shares, and they left Cellular 101 out of the deal. Cellular 101 saw things differently and sued AT&T in state court for interference with its business. Cellular 101 also filed a petition for reorganization under Chapter 11 in bankruptcy court.

Once in bankruptcy court, Cellular 101 failed to present a reorganization plan. After the statutory period of exclusivity expired, Price, Channel, and AT&T jointly filed a reorganization proposal that permitted the partial sale of Channel to AT&T to go forward and included a payment to Cellular 101 of nearly $2 million from the proceeds. The plan also permitted Cellular 101 to continue to prosecute its lawsuit against AT&T. The bankruptcy court approved the plan over Cellular 101's objections.

Shortly thereafter, Channel and Price filed an administrative priority claim seeking $495,252.83 in attorneys' fees and costs pursuant to 11 U.S.C. § 503(b) for their "substantial contribution" to Cellular 101's reorganization. The bankruptcy court granted the claim, in a reduced amount, over the objection of Cellular 101. It awarded $175,000 in fees and $31,317.60 in expenses, for a total of $206,317.60. Cellular 101 appealed to the district court, which affirmed. Cellular 101 then filed its first appeal to this court. *See Cellular 101, Inc. v. Channel Commc'ns, Inc. (In re Cellular 101, Inc.)*, 377 F.3d 1092 (9th Cir. 2004).

After briefing, but before oral argument, Cellular 101 executed a settlement agreement with AT&T, resolving the state court lawsuit. According to Cellular 101, the broad language of the agreement's irrevocable release of all claims against

Cellular 101 held by AT&T, its subsidiaries, predecessors, or affiliates, also encompassed the administrative claim of Channel and Price against Cellular 101.[1] Cellular 101 did not inform this court of the settlement, however, or argue to us that the settlement released the administrative claim that was the subject of the appeal. Instead, the questions Cellular 101 presented on appeal concerned only the statutory basis for the claim. *Id.* at 1094. Specifically, Cellular 101 argued that Price and Channel were ineligible to recover fees and costs under 11 U.S.C. § 503(b) for their assistance in Cellular 101's reorganization because (1) Price was not a "creditor" of the estate, (2) Channel did not "substantially contribute" to the reorganization plan, and (3) Price and Channel acted in their own self interest. *Id.* at 1095-98. Unaware of the settlement agreement or of its potential impact on the dispute, we issued a published opinion considering and rejecting Cellular 101's arguments and affirming the bankruptcy court's award in full. *Id.*

Shortly after our decision, Price and Channel filed a motion with the bankruptcy court to disburse the funds held to pay their administrative claim. At that point Cellular 101 asserted that the claim had been released by its agreement with AT&T. In an oral ruling, the bankruptcy court held that the AT&T settlement agreement did not apply to the administrative claim and ordered disbursement of the funds. The court also noted that, if the release did apply to the administrative claim, as Cellular 101 asserted, then the prior appeal was

> moot by the time that it got to the Ninth Circuit for oral argument, [and the argument] certainly could have been and should have been raised there. If this ultimately goes back up to the Ninth Circuit, I won-

---

[1]Cellular 101 offered a number of theories to explain why AT&T had the power to release Price's interest in the claim, including (1) that Price was a predecessor in interest or affiliate of AT&T and (2) that Channel had become a subsidiary of AT&T and the claim was a joint claim of Price and Channel subject to release by either joint claimant.

der what kind of reception it would get when the Ninth Circuit finds out, "Well, you were rolling the dice to see if the judge on — below would get reversed. Otherwise, you've got another arrow in your quiver." I think you have to shoot all the arrows at one time.

Cellular 101 appealed again, but chose to present its appeal to the BAP rather than to the district court. The BAP affirmed the bankruptcy court's disbursement order, declining to reach the merits of Cellular 101's argument that its settlement with AT&T released Channel and Price's joint administrative claim on behalf of Price. It simply held that Cellular 101 had an obligation to raise the release issue when it was before the Ninth Circuit previously because "the alleged release would have mooted the appeal." The BAP concluded that Cellular 101 had therefore waived the argument. Cellular 101 petitioned for rehearing, arguing that a party cannot waive a mootness defense because it is jurisdictional. The BAP denied the petition, stating that Cellular 101 had not raised a mootness defense, only the non-jurisdictional affirmative defense of settlement and release. Cellular 101 timely appealed.

## II.   Discussion

We review decisions of the BAP de novo. *Price v. U.S. Tr. (In re Price)*, 353 F.3d 1135, 1138 (9th Cir. 2004); *Christian Life Ctr. Litig. Def. Comm. v. Silva (In re Christian Life Ctr.)*, 821 F.2d 1370, 1373 (9th Cir. 1987). We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *See Price*, 353 F.3d at 1135; *see also Salazar v. McDonald (In re Salazar)*, 430 F.3d 992, 994 (9th Cir. 2005).

The litigation over this administrative claim has been going on since 2001, and the parties have fought their way over the issue from the bankruptcy court to this court twice, passing through the district court and the BAP one time each along

the way. As a result, the matter has now been considered by no fewer than eleven judges and is the subject of two published opinions of this court. Cellular 101 contends that it has followed proper procedure and that it was appropriate for it to wait to raise its settlement defense when it did. We disagree.

**[1]** The Supreme Court has held that all counsel have a duty "to bring to the federal tribunal's attention, without delay, facts that may raise a question of mootness." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.23 (1997) (internal quotations, citations and emphasis omitted). According to the argument now made by Cellular 101, its settlement with AT&T released Channel and Price's administrative claim and rendered the litigation moot. That happened while Cellular 101's first appeal was pending before this court, as Cellular 101 was necessarily aware. Cellular 101 had an obligation to inform the court of the settlement and its belief that the claim had been released.

**[2]** The obligation to inform the court of a potential settlement is of such critical importance to the maintenance of orderly proceedings and to the prevention of needless delay that a lawyer who fails to fulfill that obligation may be personally subject to sanctions. *See Gould v. Bowyer*, 11 F.3d 82, 84 (7th Cir. 1993) ("[I]n order to spare busy courts unnecessary work, parties must advise a court when settlement is imminent. . . . The duty is implicit in the characterization of lawyers as officers of the court, and a breach of it therefore opens a lawyer to sanctions.") (citation omitted); *see also DHX, Inc. v. Allianz AGF MAT, Ltd.*, 425 F.3d 1169, 1174-75 (9th Cir. 2005) (Beezer, J., concurring) (noting that "[w]e are engaged to decide live cases or controversies as presented by the attorneys of record, and it is not for a court to smoke out who settled with whom," and that the "failure to promptly disclose" complete and accurate settlement information is "sanctionable conduct"). A party claiming the benefit of a settlement is no less accountable.

**[3]** Cellular 101's current appeal rests upon the premise that the AT&T agreement released the administrative claim. But if that is true now, it was true when Cellular 101 appeared before this court the first time. Even if we assume that Cellular 101 knew that Channel and Price would contest the assertion that the AT&T agreement released their claim, Cellular 101 still should have brought the agreement to the court's attention. If the court ultimately concluded that the claim was released, the disclosure would have obviated the need for the court to resolve the other issues raised in the first appeal. At a minimum, knowledge of the agreement and the parties' arguments would have permitted the court to determine, logically and properly, which issues it needed to reach and in what order they should be addressed. Cellular 101 chose, instead, to arrogate to itself the power to make those judgments. Cellular 101 elected to try to win its appeal with the arguments it had already briefed, presumably hoping that if it lost, it could try for a second bite at the apple by raising the release defense afterwards. Regardless of Cellular 101's motives, we cannot permit the court to be subject to such manipulation. We conclude that by failing to raise the release issue in the prior appeal, Cellular 101 waived its right to assert the defense in subsequent proceedings.

**[4]** Settlement and release is an affirmative defense and is generally waived if not asserted in the answer to a complaint. *See* FED. R. CIV. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . release"); *Metcalf v. Golden (In re Adbox, Inc.)*, 488 F.3d 836, 841 (9th Cir. 2007).[2] Even though Cellular 101

---

[2]Although, consistent with our prior decisions, we use the term waiver here to describe the loss of an affirmative defense through the failure to raise it in a timely manner, a more accurate term may be forfeiture. *See United States v. Olano*, 507 U.S. 725, 731 (1993) (holding that "a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it") (internal quotations

could not have asserted the defense at the pleading stage because its settlement with AT&T did not occur until Cellular 101's first appeal was already pending, Cellular 101 had an opportunity and an obligation to raise the issue at that time because the purported release, in its view, mooted the appeal.

**[5]** We have held that we "need not and do not consider a new contention that could have been but was not raised on the prior appeal." *Munoz v. County of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982). Permitting a case to proceed to a decision on the merits before asserting a previously available defense "undermines the integrity of the judicial system," "wastes judicial resources," and "imposes substantial costs upon the litigants." *Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 756 (9th Cir. 1999); *see also Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (Friendly, J.) ("It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.").

We already decided that Cellular 101 is required to pay Price and Channel's administrative claim, when it affirmed the bankruptcy court's order. *Cellular 101, Inc.*, 377 F.3d at 1098. That decision has achieved finality. It is the law of the case, and Cellular 101 may not now attack it on a ground that it had a fair opportunity to argue previously. *Munoz*, 667 F.2d at 817.[3]

---

and citations omitted). The term forfeiture may also be more precise because the "waiver" in this context need not be knowing or intentional. *See id.* at 733 (clarifying that "[w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right") (internal quotations and citations omitted); *see also Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 n.2 (D.C. Cir. 1997) (discussing the potential inaccuracy of the term waiver and holding that "[t]he failure to plead need not be intentional for the party to lose its right to raise the defense").

[3]Cellular 101 maintains that the failure to raise an issue in a prior appeal does not result in waiver, citing *U-Haul International, Inc. v. Jartran, Inc.*,

Cellular 101 contends that it properly waited until its case was remanded to the bankruptcy court before raising its settlement and release defense because it accurately anticipated that Price and Channel would contest the applicability of the release to their claim and because the viability of the defense turned on facts not present in the appellate record. It argues that the defense therefore could not have been raised previously because it did not fit within the three exceptions to the general rule that appellate courts will not consider an issue raised for the first time on appeal: (1) where "review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process," (2) "when a new issue arises while appeal is pending because of a change in the law," or (3) "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985). Cellular 101 insists that even if it had raised the release issue during the prior appeal, we would have been required to remand the matter for factual findings, implying that its failure to inform the court of the settlement agreement was harmless and should be without consequence.

First, the above list of exceptions is not exhaustive. Appellate courts may always consider challenges to their jurisdiction, including any relevant factual developments, regardless of whether the issue was raised below. *See Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003) (discussing when a court may look outside the district court record and noting that "[c]onsideration of new facts may even be mandatory, for example, when developments render a controversy moot and

---

793 F.2d 1034 (9th Cir. 1986). *U-Haul* involved a prior *interlocutory* appeal, however, where the court's jurisdiction was limited to consideration of a specific issue. *Id.* at 1037-38. Accordingly, the other issues raised in the later appeal could not have been raised previously, because the court of appeals did not have jurisdiction over them, and the appellant, unlike Cellular 101, did not forgo any opportunity to present its arguments or defenses at an earlier time. *Id.*

thus divest us of jurisdiction"). That there actually be an ongoing dispute to resolve is a prerequisite for jurisdiction.[4]

Second, the question of whether the release applied to Price and Channel's administrative claim was arguably "purely one of law" capable of being resolved by this court without remand for factfinding, and thus may have fallen within the third exception identified above. Cellular 101 argues that AT&T, through its ownership and control of Channel, may have released the claim held jointly by Price and Channel because California Civil Code § 1475 provides that a release by one joint claimant entirely releases a jointly held debt. Relying on *Hurley v. Southern California Edison Co.*, 183 F.2d 125, 131 (9th Cir. 1950), Cellular 101 maintains that the validity of the release turns on its knowledge at the time of the AT&T agreement, including whether it had reason to know that AT&T would not account to Price, and that factfinding and further development of the record was therefore necessary. Had Cellular 101 apprised us of the AT&T settlement during the first appeal, however, we might have held as a matter of law that the terms of the AT&T agreement were unambiguous and did not release Price and Channel's administrative claim. Alternatively, we could have concluded that the provisions of California Civil Code § 1475, which

_____

[4]We have held that we lack jurisdiction over cases in which all the parties have signed a settlement contract that we have interpreted as resolving the issues on appeal. *See, e.g., Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1108-09 (9th Cir. 2005) (holding that a settlement applied only to the parties to the agreement); *Exxon Corp. v. Heinze*, 32 F.3d 1399, 1400, 1403 (9th Cir. 1994) (declining to issue an advisory opinion reviewing a district court order resolving claims both parties agreed were later settled).

Lest there be any doubt about the present appeal, we note that the parties continue to contest the applicability of the settlement agreement, of which Price is not a signatory. Although Cellular 101 may have an argument that Price's right to collect the administrative claim was extinguished by that agreement, we are satisfied that a live dispute requiring adjudication of the parties' respective rights persists and that we therefore continue to have jurisdiction over the case.

pertain to obligations held by joint creditors, are simply inapplicable to joint administrative claims awarded in a bankruptcy proceeding. Indeed, it appears that, when the case was actually remanded, the bankruptcy court rejected Cellular 101's settlement and release argument on the merits without reference to any newly discovered evidence and without making any findings regarding Cellular 101's mental state.

Third, and most importantly, regardless of the likelihood that remand for factfinding might have been necessary, the decision whether and when to remand the matter was one for the court to make, not Cellular 101. Cellular 101 usurped the decision as to how the case should be organized when it proceeded with the arguments it had already presented on appeal and elected not to advise the court of an event which it believed disposed of the claim. The bankruptcy court was correct in its assessment that, having taken its shot, Cellular 101 does not get another opportunity to reach into its quiver for another arrow. Cellular 101 did not have the right to compel the court to reach Cellular 101's other arguments and to devote considerable effort to writing a published opinion, prior to ascertaining whether the parties had already resolved their dispute.

## III.  Conclusion

[6] Cellular 101 breached its duty to timely inform the court that it had reached a settlement with AT&T that it understood potentially mooted its prior appeal. As a consequence of failing to timely raise the defense of settlement and release, it waived or forfeited that defense. The BAP properly affirmed the bankruptcy court's order to disburse funds to pay the administrative claim.

**AFFIRMED.**