ORDER GRANTING DEFENDANTS' MOTION FOR ENTRY OF JUDGMENT
EDWARD M. CHEN, United States District Judge *1201 The parties disagree whether anything remains to be litigated in this case following the Ninth Circuit's reversal of this Court's prior grant of summary judgment in favor of Plaintiffs under the interstate commerce clause. Plaintiffs insist that, following their loss of the commerce clause claim, they may now pursue a theory challenging Defendants' conduct under the Fourteenth Amendment's Equal Protection Clause. Defendants argue that Plaintiffs have waived that theory. For the reasons explained below, the Court agrees. Accordingly, Defendants' motion is GRANTED .
I. PROCEDURAL HISTORY
Plaintiffs' initial complaint alleged six causes of action, including for violations of the dormant Commerce Clause, equal protection under the federal and state constitutions, Medicaid statutes and regulations, and for declaratory, injunctive, and other equitable relief. See Docket No. 1-2 at 12. After pressing the Court to bifurcate liability and prospective relief from the question of retrospective damages, Plaintiffs moved for summary judgment only on their Commerce Clause and 42 U.S.C. § 1396a(a)(13)(A) claims.[1] See Docket No. 39 at 15-20. They did not move for summary judgment on their equal protection claim. Id. Although as pled in the complaint, violation of Section 1396a(a)(13)(A) also violated equal protection, see Compl. ¶ 42 and note 1, supra , Plaintiffs' motion for summary judgment relied exclusively on statutory grounds. See Docket No. 39 at 17-20. Plaintiffs did not advance any argument under the equal protection clause.
After Plaintiffs' motion, Defendants cross-moved for summary judgment on all of Plaintiffs' causes of action, including the equal protection claim. See Docket No. 51 at 18-20. Plaintiffs opposed Defendants' motion, arguing in part that the alleged conduct violated the equal protection clause. See Docket No. 52 at 19-20. However, Plaintiffs' argument on the claim was brief: it consisted of a single page with a conclusory argument that Defendants' claim of administrative necessity could not satisfy rational basis review for the same reasons it could not survive scrutiny under the commerce clause (id. ), which subjects discriminatory laws to a "virtually per se rule of invalidity." Chemical West Mgmt., Inc. v. Hunt , 504 U.S. 334, 344 n.6, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992) (quotation omitted).
In their subsequently filed brief in opposition to Plaintiffs' motion for summary judgment, Defendants argued that Plaintiffs abandoned their equal protection claim because Plaintiffs had not affirmatively moved for summary judgment thereon. See Docket No. 56 at 9. Plaintiffs did not challenge that assertion in their reply *1202 brief. See Docket No. 58. They left the claim of abandonment of the equal protection claim unanswered.
Defendants' reply brief in support of their own cross-motion re-iterated that Plaintiffs had abandoned the equal protection claim by failing to affirmatively move on it, and by noting that Plaintiffs' opposition to Defendants' motion for summary judgment on that claim merely reiterated their argument under the commerce clause without discussing the necessary elements of an equal protection claim. See Docket No. 59 at 12-15.
At the October 15, 2015 hearing on the cross-motions, Plaintiffs did not rebut the abandonment assertion or argue in favor of an equal protection claim. See Docket No. 89.
The Court granted Plaintiffs' motion for partial summary judgment; it found that Defendants had violated the commerce clause. See Docket No. 65 at 43. It also partially granted Defendants' motion for summary judgment under § 1396a(a)(13)(A). Id. at 44. The judgment was partial insofar as Plaintiffs had only sought judgment on liability, not damages. The Court did note that it "need not reach Plaintiffs' Equal Protection claims." Id. at 43. Since Plaintiffs had not moved for judgment on their equal protection claim, the Court was referring to disposition of Defendants' cross-motion for summary judgment on that issue.
The Court then ordered the parties to file supplemental briefs regarding whether Plaintiffs were entitled to retroactive monetary relief. Plaintiffs' supplemental brief surprisingly argued that their complaint "contains no federal causes of action and seeks no remedies under federal law," and that "[i]nstead, it contains only state law causes of action and seeks only remedies provided for under California law." Docket No. 70 at 1. Plaintiffs argued that they were entitled to monetary relief under California Code of Civil Procedure § 1085, and expressly argued that the Court should not decide the question of retroactive relief pursuant to 42 U.S.C. § 1983. Id. In its order regarding retroactive damages, the Court observed that "Plaintiffs expressly waived federal claims, stating that the state complaint contains only state law causes of action and seeks only remedies provided for under California law. " Docket No. 82 at 4 (emphasis added); see also id. ("Plaintiffs expressly now disavow any federal causes of action...."). The Court ultimately held that § 1085 did not permit recovery of retroactive damages. Id. at 10.
Plaintiffs then appealed the Court's order regarding retroactive damages. See Docket No. 83. However, because the appeal was premature (there was not yet a final judgment), the Ninth Circuit granted Plaintiffs' motion for voluntary dismissal of the appeal. See Docket No. 99.
Based on Plaintiffs' disavowal of any federal cause of action and the Court's holding that § 1085 did not afford Plaintiffs a basis for relief, Defendants sought leave to file a motion for reconsideration of the Court's summary judgment in favor of Plaintiffs on the commerce clause claim, arguing that the order was not supported by any cause of action in light of the Court's holding regarding § 1085 and Plaintiffs' disavowal of a federal cause of action. See Docket No. 92. The Court granted Defendants leave to file for reconsideration. See Docket No. 110. In response, Plaintiffs sought leave to amend their complaint to state a cause of action under 42 U.S.C. § 1983 in order to save their judgment on the commerce clause. See Docket No. 111. The proposed amended complaint repeated the same six causes of action initially pled in state court, but added a seventh cause of action titled "federal claims" seeking relief under *1203 42 U.S.C. § 1983 and 1988 based on violations of the interstate commerce clause, equal protection clause, and federal Medicare laws. See Docket No. 113 ¶ 57.
Technically, the amended complaint re-asserts an equal protection claim. However, in requesting leave to amend, Plaintiffs explained that their proposed amended complaint "merely makes clear what this Court and the defendants were already assuming during the prior summary judgment process, which is that the plaintiffs are asserting a claim for relief under 42 U.S.C. Section 1983.... [I]t is the defendants that necessitated the amendment to plaintiffs' Complaint by challenging through their motion for reconsideration this Court's December 21, 2015 partial summary judgment Order. Had the defendants never filed that motion for reconsideration which questioned the correctness of this Court's December 21, 2015, Order, plaintiffs' proposed amendment would have been unnecessary and redundant." Docket No. 116 at 3-4. In other words, there was no reason for the Court or Defendants to believe that the amended complaint was intended to preserve an equal protection claim; rather, it was expressly presented by Plaintiffs as necessary only to reassert a federal cause of action in support of relief under the commerce clause, a clarification needed after Plaintiffs' disavowed any federal claim. With that understanding, the Court granted Plaintiffs' motion for leave to file an amended complaint. Docket No. 121 at 5. Hence, notwithstanding the amended complaint, Plaintiffs have never pursued in earnest an equal protection claim.
Further supporting the conclusion that Plaintiffs did not intend to actively litigate the equal protection claim, at the September 22, 2016 hearing concerning their motion for leave to amend the complaint, Plaintiffs "request[ed] that based on the Court's rulings to date [the Court] enter a final judgment so the case [can] move forward." Docket No. 142 at 37:10-12; id. at 37:18-19 ("We would just prefer that a final judgment be entered."). At Plaintiffs' request, on October 12, 2016, the Court entered final judgment, incorporating its summary judgment order as well as the subsequent orders granting Plaintiffs leave to amend and partially granting Defendants' motion for reconsideration. See Docket No. 126. That final judgment as requested by Plaintiffs contained no adjudication of any equal protection claim.
Plaintiffs thereafter moved for attorneys' fees pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d). See Docket Nos. 127 and 128. The Court granted the request. See Docket No. 159.
Meanwhile, Plaintiffs appealed from final judgment with respect to the Court's retroactivity ruling, see Docket No. 129, and Defendants appealed with respect to the Court's commerce clause ruling, see Docket No. 141, and the award of attorneys' fees and costs.
In their opening brief on appeal, Plaintiffs asserted that "the Ninth Circuit has jurisdiction over the Hospitals' appeal pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment that disposes of all parties' claims. " Sondheimer Decl., Ex. B (AOB 6) (emphasis added). Defendants took the same position. Sondheimer Decl., Ex. C (AOB 4).
There were three appeals before the Ninth Circuit: the Department's appeal of the commerce clause holding, the Department's appeal of the attorneys' fees and costs award, and the Hospitals' appeal of the Court's holding on retroactivity. See Asante v. Cal. Dep't Health Care Servs. , 886 F.3d 795, 798 (9th Cir. 2018). The only arguments pressed by Plaintiffs on appeal were that Defendants' policies violated the commerce clause and that Section 1085 permits retroactive relief. See First Br. on *1204 Cross-Appeal, Case No. 16-17080, Docket No. 14 (9th Cir. Apr. 27, 2017). They made no reference to the equal protection clause other than noting in passing that the complaint had asserted a claim. Id. at 2. Defendants' cross-brief touched on the same issues, but also argued that the District Court abused its discretion by permitting Plaintiffs to amend their complaint. See Second Br. on Cross-Appeal., Docket No. 16, at 50-58 (9th Cir. Jun. 29, 2017). In response, Plaintiffs argued leave to amend was proper because it was for the purposes of clarifying that they had always been seeking prospective relief under federal law; but they made no argument that an equal protection claim remained pending or unresolved. See Third Br. on Cross-Appeal, Docket No. 21 at 34-41 (9th Cir. Jul. 18, 2017).
The Ninth Circuit reversed the Court's judgment on the commerce clause. Asante , 886 F.3d 795. The Court held that it had "jurisdiction pursuant to 28 U.S.C. § 1291." Id. at 799. It concluded that Defendants had not violated the commerce clause. Id. at 802. In resolving that issue, the Ninth Circuit found it unnecessary to reach the questions presented in the other two appeals, namely, the Hospitals' appeal of the retroactivity holding and the Defendants' appeal of attorneys' fees and costs. Id. at 803. It also did not reach the other issues raised in Defendants' appeal, including whether the Court erred by granting Plaintiffs leave to amend, apparently believing that the issue was mooted by resolution of the commerce clause claim.
The Ninth Circuit issued its mandate on May 22, 2018, see Docket No. 174, reversing without expressly stating that the case was being remanded for further proceedings on any issue.
II. DISCUSSION
The question now before the Court is whether Plaintiffs may now proceed with their equal protection claim or whether they have effectively waived or abandoned it through their litigation conduct in this Court and on appeal before the Ninth Circuit. The parties have also briefed the question whether the Court has jurisdiction to entertain Plaintiffs' new state law assertion that Defendants have violated State Plan Amendment 15-020.
A. Plaintiffs are Foreclosed From Pursuing Their Equal Protection Claim
The complicated procedural history recounted above is not entirely free of ambiguity as to whether Plaintiffs ever intended to pursue their equal protection claim.
On the other hand, Plaintiffs (i) opposed Defendants' motion for summary judgment on the equal protection claim on the merits, albeit in a brief and conclusory fashion; and (ii) retained the equal protection claim in their amended complaint.
While not entirely free from ambiguity, the overwhelming weight of the evidence supports the conclusion that Plaintiffs waived their equal protection claim, as inferred from their litigation conduct. It may be that any one of these factors in isolation would not have been enough to give rise to a waiver, but here, all of them operating together overwhelmingly support that conclusion because Plaintiffs failed to raise equal protection arguments at nearly every juncture despite having the opportunity to do so. See U.S. v. Dreyer , 804 F.3d 1266, 1277 (9th Cir. 2015) ("Generally, an appellee waives any argument it fails to raise in its answering brief."); In re Cellular 101, Inc. , 539 F.3d 1150, 1155 (9th Cir. 2008) (a party waives an argument when it could have raised it on an appeal but did not do so); BankAmerica Pension Plan v. McMath , 206 F.3d 821, 826 (9th Cir. 2000) ("A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case.").
There are two particularly strong indicia of abandonment or waiver here: (1) Plaintiffs' request for a final judgment, and (2) their failure to advance the equal protection argument on appeal.
With respect to the first factor, "[i]t is axiomatic that orders granting partial summary judgment, because they do not dispose of all claims, are not final appealable orders under section 1291." Dannenberg v. Software Toolworks, Inc. , 16 F.3d 1073, 1075 (9th Cir. 1994) (quoting Cheng v. Commissioner , 878 F.2d 306, 309 (9th Cir. 1989) ). In this context, "final" must really mean "final." The Ninth Circuit has dismissed appeals for lack of jurisdiction under § 1291 where the parties acted to evade the finality requirement by, e.g. , stipulating to a waiver of the statute of limitations on claims dismissed without prejudice, see Dannenberg , 16 F.3d at 1074, stipulating that dismissed claims could be revived if an appeal was successful, see Dannenberg , 16 F.3d at 1077, Cheng , 878 F.2d at 309-10, or amending their complaints to withdraw un-adjudicated claims to create the impression no claims remained pending, effectively dismissing those claims without prejudice, see Am. States Ins. Co. v. Dastar Corp. , 318 F.3d 881, 886 (9th Cir. 2003).[2] The point of *1206 finality is to avoid piecemeal appeals. A final appealable judgment is generally one that resolves all claims against all parties. In this case, Plaintiffs requested a final judgment (potentially encompassing all claims)-even though the equal protection claim had not been adjudicated.
The final judgment rule does not necessarily mean that a Court has no choice but to adjudicate each and every claim or alternative theory advanced by a plaintiff, even if resolution of a single claim can effectively provide the plaintiff with full relief-as happened here. The rules of procedure are pragmatic, and they recognize that in certain cases judicial economy may be better served by focusing on resolution of a plaintiff's key claims, rather than the entire kitchen-sink of alternative theories. Hence, Rule 54(b) permits the Court, at its discretion, to enter partial final judgment on fewer than all claims in a multi-claim or multi-party action if it "expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Rule 54(b) gives the district court the opportunity to consider that question, usually in response to a party's motion to seek such certification. The court of appeals then would have the opportunity to "scrutinize for an abuse of discretion in light of the interest of sound judicial administration the district court's evaluation of such factors as the interrelationship of the claims [both certified and uncertified] so as to prevent piecemeal appeals in cases which should be reviewed only as single units." Curtiss-Wright Corp. v. General Elec. Co. , 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980).
Plaintiffs could have but did not request partial final judgment under Rule 54(b), expressly reserving the equal protection claim. As a result, neither this Court nor the Court of Appeals had the opportunity to assess the pros and cons of Plaintiffs' litigation plan (to seek judgment on the commerce clause theory first, and then be in a position to assert the equal protection clause claim if they lost on appeal). Plaintiffs never put the issue before the court. There was no reason for the Court to believe they were seeking anything less than a true final judgment. This is especially so since Plaintiffs never contested Defendants' assertion that Plaintiffs had abandoned the equal protection claim.
To the extent Plaintiffs contend certification under Rule 54(b) was not necessary because this Court's grant of summary judgment on the commerce clause claim gave Plaintiffs as much relief as they could have achieved under the equal protection claim and that there is no need to litigate alternative theories to obtain duplicative relief, the Court need not reach the question whether Plaintiffs' equal protection and commerce clause claims constituted a single claim or separate claims for purposes of Rule 54(b). Compare Wood v. GCC Bend, LLC , 422 F.3d 873, 880-81 (9th Cir. 2005) ( Rule 54(b) certification was improper where plaintiff alleged termination and demotion on the basis of age and retaliation because "her legal right to relief [on both theories] stems largely from the same set of facts and would give rise to successive appeals that would turn largely on identical and interrelated facts") with Int'l Longshore and Warehouse Union v. ICTSI Oregon, Inc. , 863 F.3d 1178, 1185-86 (9th Cir. 2017) (LMRA claim and antitrust counterclaim were separate for Rule 54(b) purposes despite substantial factual overlap where they presented "discrete legal issues" that were "complicated and not routine") and U.S. Citizens Ass'n v. Sebelius , 705 F.3d 588, 595-96 (6th Cir. 2013) (alternative theories challenging constitutionality of statute as violating free expression and association, right to liberty, and right to privacy in medical information were separate from commerce clause theory for Rule 54(b)
*1207 purposes because "[t]he grant of declaratory or injunctive relief on one of these counts would not vindicate the constitutional right asserted in the other counts," which were still pending in the district court). That question is ultimately immaterial to the outcome of this case: if the two claims were similar enough so as to constitute a single claim under Rule 54(b), Plaintiffs could and should have raised the equal protection argument to support the judgment on appeal; if they were distinct and separate claims, Plaintiffs effectively waived the equal protection claim by requesting final judgment (rather than certification under Rule 54(b) ). Generally, a judgment "must conclusively terminate the litigation in order to be considered final" and "an order that may terminate the proceeding is insufficient," Cheng , 878 F.2d at 310.
With respect to the second factor, Plaintiffs made no argument to the Ninth Circuit that the Court's judgment in their favor should be affirmed on the alternative basis of the equal protection clause if the Ninth Circuit were to disagree with the commerce clause holding. Indeed, they represented to that Court that the judgment below was final. Plaintiffs failed to raise the equal protection claim even though the appeals court "may affirm a grant of summary judgment on any ground supported by the record, even if not relied upon by the district court." U.S. ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall , 355 F.3d 1140, 1144 (9th Cir. 2004) (emphasis added). That includes affirmance based on a legal theory that was not reached by the district court. See K.M. ex rel. Bright v. Tustin Unified School Dist. , 725 F.3d 1088, 1102-03 (9th Cir. 2013) (explaining that "we could review the record to determine whether there are alternate legal or factual grounds on which to affirm summary judgment [but] we are not bound to do so"); see also Nw. Env. Def. Ctr. v. Brown , 640 F.3d 1063, 1080-81 (9th Cir. 2011) (considering and rejecting alternative legal theory for affirmance even though it was not raised below). Failure to make an argument in an opposition brief on appeal risks waiver. See Hawai'i Papaya Indus. Assoc. v. Cty. of Hawaii , 666 Fed.Appx. 631, 633 n.2 (9th Cir. 2016) (holding that appellees "waived [an] argument by not raising it as an alternative ground for affirmance in their answering brief on appeal"); U.S. v. Dreyer , 804 F.3d 1266, 1277 (9th Cir. 2015) ("Generally, an appellee waives any argument it fails to raise in its answering brief."). Case law on this point is plentiful. See , e.g. , In re Cellular 101, Inc. , 539 F.3d 1150, 1155 (9th Cir. 2008) (appealing party who failed to raise legal argument on appeal could not assert that argument in later proceedings); Parmalat Capital Finance Ltd. v. Bank of Am. Corp. , 671 F.3d 261, 270-71 (2d Cir. 2012) (following remand from first round of appeal, district court erred by affirming its earlier conclusion on the basis of a new legal argument that the parties waived by failing to raise in the first round of appeal); Eason v. Thaler , 73 F.3d 1322, 1329 (5th Cir. 1996) (prisoner who alleged that exposure to natural gas violated Civil Rights Act in first round of appeal was precluded from arguing after remand that such exposure was unconstitutional cruel and unusual punishment because he was "deemed to have abandoned this claim by not raising it in the brief he submitted ... in his original appeal"). Cf. Keiran v. Home Capital, Inc. , 858 F.3d 1127, 1133 (8th Cir. 2017) (in first round of appeal, plaintiffs challenged only whether mortgage loan disclosures were deficient, so they could not subsequently raise a challenge to the accuracy of the disclosures).
Plaintiffs suggested at the hearing that the Ninth Circuit would not have been able to review the equal protection claim because this Court had not made specific "findings of fact or law" on it, thus implying *1208 they did not act unreasonably in failing to raise the issue before the Court of Appeals. However, Plaintiffs have not identified any factual issues that were not already part of the Court's order on the commerce clause on which the equal protection claim could turn. Indeed, Plaintiffs thought that the existing record was sufficient to resolve the question because in opposing Defendants' motion for summary judgment on the equal protection claim, Plaintiffs did not argue that there were open questions of material fact; rather, they simply referred back to their argument concerning Defendants' administrative necessity defense under the commerce clause. See Docket No. 52 at 19-20. Plaintiffs deprived the Ninth Circuit of the opportunity to make that determination itself. Plaintiffs could have but did not flag the issue, thus depriving the Ninth Circuit of the opportunity to decide whether it could resolve the issue on appeal based on the record or to remand for further factual development and pleadings. Plaintiffs' failure to do so was not excusable.
In light of these and the many other circumstances described above, Plaintiffs have not acted to preserve or pursue their equal protection claim. They had a full and fair opportunity to advance their equal protection claim prior to appeal or act to preserve it under Rule 54(b), but did not do so. See BankAmerica , 206 F.3d at 826. And they could have raised the equal protection argument before the Ninth Circuit, but did not do so. See In re Cellular 101 , 539 F.3d at 1155. Plaintiffs have effectively waived the claim through their litigation conduct. Accordingly, Defendants' motion for entry of judgment is GRANTED .
B. Plaintiffs Are Not Entitled to Re-open the Judgment Under Rule 60.
In their opposition brief, Plaintiffs argue that Rule 60 permits the Court to "re-open" final judgment.[3] Plaintiffs have not shown that Rule 60 relief is appropriate in these circumstances. Rule 60(a) authorizes the Court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). No such clerical error or mistake occurred here.
Rule 60(b) authorizes the Court to grant "relief" from a final judgment in case of (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason that justifies relief. See Fed. R. Civ. P. 60(b)(1)-(6). Reasons (1)-(5) clearly do not apply here. Plaintiffs appear to rely instead on the catch-all paragraph (6), noting that relief is permissible when it is "inequitable to permit a judgment to stand." Ackerman v. United States , 340 U.S. 193, 202, 71 S.Ct. 209, 95 L.Ed. 207 (1950) (Black, J., dissenting). None of the cases cited by Plaintiffs are analogous to the current situation. See Hall v. Haws , 861 F.3d 977, 987-88 (9th Cir. 2017) (district court did not abuse discretion under Rule 60(b)(6) in case involving "a petitioner whose habeas petition was dismissed without reaching the merits of his claim, while his co-defendant was granted habeas relief on the same claim based on the same error from the same trial"); Patapoff v. Vollstedt's Inc. , 267 F.2d 863, 866 (9th Cir. 1959) (relief from judgment appropriate in bankruptcy proceeding where "appellant made *1209 a showing that she had a defense which she was misled into waiving through the erroneous action of the attorney" and "[t]he trial court, although stating 'I don't want to foreclose' this party, nevertheless, because of its plain misapprehension of the situation, accomplished just that foreclosure by its order").
There was no inadvertent mistake here nor is there manifest injustice. Plaintiffs made an affirmative decision not to move for summary judgment on their equal protection claim. Plaintiffs acted in a conscious effort to procure an appealable order. Thereafter, they had several opportunities to advance an equal protection argument but failed to do so at every juncture. These circumstances do not merit relief from final judgment. See Section II.A, supra.
C. There is No Federal Question Jurisdiction Over Alleged Non-compliance With State Medical Regulations
Federal question jurisdiction requires either a federal cause of action or a state law cause of action which "necessarily depends on resolution of a substantial question of federal law[.]" Christianson v. Colt Indus. Operating Corp. , 486 U.S. 800, 808, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (citation omitted). Further, the question must be "contested," "substantial," and "indicat[e] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Grable & Sons Metal Prods. v. Darue Eng'g Mfg. , 545 U.S. 308, 125 S.Ct. 2363, 2367, 162 L.Ed.2d 257 (2005).
Medicaid is a federal-state program wherein the federal government pays for medical services to the poor, elderly, and disabled. See 42 U.S.C. § 1396 et seq. States may choose to participate by submitting a "State Plan" to the U.S. Department of Health and Human Services for approval. The State Plan describes the policy and methods used to set payment rates for each service. The Centers for Medicare and Medicaid Services ("CMS") administer the Medicaid program including approval of the State Plans and State Plan Amendments. 42 C.F.R. §§ 430.10, 430.15(b). Plans and amendments must meet federal requirements. See 42 U.S.C. §§ 1396a(b) ; 42 C.F.R. §§ 430.10, 430.12. The CMS reviews State Plan compliance with Medicaid's statutory and regulatory requirements. Douglas v. Indep. Living Ctr. of S. Cal., Inc. , 565 U.S. 606, 132 S.Ct. 1204, 1208, 182 L.Ed.2d 101 (2012). CMS may withhold federal funds from non-compliant plans. 42 C.F.R. §§ 430.15, 430.18, 430.35.
On September 29, 2015, California obtained CMS approval of State Plan Amendment 15-020 ("SPA 15-020"). The Amendment made certain changes to the reimbursement formula, including for out-of-state border hospitals, effective July 1, 2015. In the May 31, 2018 Case Management Statement, Plaintiffs alleged that Defendants have still not implemented SPA 15-020 and have not reprocessed 1,200 of Plaintiffs' Medi-Cal claims relating to service from July 1, 2015 to June 30, 2016. See Docket No. 177 at 5. According to Defendants, however, only 50 of those claims identified involve "fee-for-service" payments that were at issue in this litigation (the rest are payments by managed care plans), and they likely involve technical processing errors in light of the fact that Plaintiffs have successfully processed over 895 claims from FY 2013-14. Id. at 9-11, 100 S.Ct. 1460. Plaintiffs requested that the Court order the Department to follow SPA 15-020 within 90 days.
The Court asked the parties to brief whether this alleged violation involved a federal question. Plaintiffs have not identified any federal cause of action permitting them to raise this challenge. Rather, they cite language in *1210 Reese v. Kizer , 46 Cal.3d 996, 251 Cal.Rptr. 299, 760 P.2d 495 (1988), that state plans must "conform to the governing federal statutes and regulations," id. at 998, 251 Cal.Rptr. 299, 760 P.2d 495, but they have not alleged non-compliance with a federal statute or regulation. Plaintiffs also cite federal regulations stating that "[d]eterminations as to whether State plans ... originally meet or continue to meet the requirements for approval are based on relevant Federal statutes and regulations," 42 C.F.R. § 430.15(a)(1), but whether a plan meets federal requirements is a different question from whether Defendants' failure to adhere to a plan creates a federal cause of action. Plaintiffs cite no other basis for their claim.
As Defendants suggest, at best, the alleged non-compliance might give rise to a contract claim (i.e. , Defendants' failure to act in accord with their agreement with the federal government) or a state law cause of action for non-compliance with state regulations, see Cal. Ass'n for Health Servs. at Home v. Dep't of Health Servs. , 148 Cal.App.4th 696, 705-06, 56 Cal.Rptr.3d 102 (2007) (holding that if California's Department of Health Services "violates the terms of the state plan, it has violated state law as embodied in a regulation," and "the violation of the terms of the state plan, a state law, itself gives plaintiffs standing" to pursue a claim). The interpretation and enforcement of SPA 15-020 is a question of state law. See Cal. Med. Ass'n v. Shewry , No. CV-083363 CASMANX, 2008 WL 11338088, at *5 (C.D. Cal. Jun. 23, 2008) (remanding case to state court where claim turns on interpretation of Department's obligation to administer Medi-Cal in accordance with State Plan).
In light of the above, Plaintiffs have not shown that a federal cause of action exists to support the alleged non-compliance with SPA 15-020.
In any case, even if the Court were to find jurisdiction over the equal protection claim, it would decline to exercise supplemental jurisdiction over the SPA 15-020 dispute, which is outside of the scope of relief requested in Plaintiffs' complaint. To argue otherwise, Plaintiffs cite a catch-all request in their amended complaint for "[a]n Order compelling the Defendants to comply with the legal duties imposed upon them under the federal Medicaid laws and regulations and with all applicable provisions of the United States and California Constitutions, including payment of the proper amount owed plaintiffs both retroactively and prospectively." Docket No. 173 at p. 19. But this request does not seek relief for violation of California state regulations, like SPA 15-020. Moreover, the core facts for this claim will turn on the particular details of each of the 1,200 disputed payments, raising minute and technical issues that are far-removed from Plaintiffs' original allegations that Defendants' reimbursement plan, on a policy and systemic level, violated the Commerce Clause. See 28 U.S.C. § 1367(c) (the district court may decline to exercise supplemental jurisdiction if it "raises a novel or complex issue of State law," "substantially predominates over the claim or claims over which the district court has original jurisdiction," or the court "has dismissed all claims over which it has original jurisdiction").
III. CONCLUSION
For the reasons above, the Court GRANTS Defendants' request for entry of final judgment. Plaintiffs have waived their equal protection claim and, as a result, are foreclosed from reviving it following the Ninth Circuit's decision and mandate. Furthermore, Plaintiffs' allegation that Defendants are in violation of SPA 15-020 does not raise a federal question over which this Court has jurisdiction.
In light of the Court's holding, all outstanding issues in this case have been resolved.
*1211 This order disposes of Docket No. 181. The Court directs the Clerk to enter judgment for Defendants and to close the case.
IT IS SO ORDERED .
This statute requires that a state plan for medical assistance "take into account (in a manner consistent with section 1923 of this title) the situation of hospitals which serve a disproportionate number of low-income patients with special needs." 42 U.S.C. § 1396a(a)(13)(A). Plaintiffs alleged that the Department violated these requirements by "annually distribut[ing] over two billion dollars ($2,000,000,000) in supplemental Medi-Cal DSH monies, none of which has even been paid to any out-of-state hospital." Compl. ¶ 41. Plaintiffs alleged that "[t]he distribution of DSH monies to hospitals located only in California also violates the Interstate Commerce Clause (U.S. Const., art. I, § 8, cl. 3 ) and the Equal Protection Clauses of both the United States Constitution and the California constitution." Id. ¶ 42.
The Ninth Circuit has once affirmed jurisdiction under § 1291 notwithstanding the plaintiff's dismissal of an un-adjudicated claim without prejudice, but that was because the record indicated that, pragmatically speaking, the claim would not be pursued so the judgment was effectively final. See James v. Price Stern Sloan, Inc. , 283 F.3d 1064, 1068 (9th Cir. 2002) (plaintiff requested and obtained court permission to dismiss a claim because litigating the claim "would not be an efficient use of time and resources, given the small amount of artwork actually involved").
The Court may entertain this request because the Ninth Circuit mandate has issued and the request is not based on questions that were before the appeals court. See Standard Oil Co. of Cal. v. U.S. , 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976).